## City of Marion v. Nunn et al.

Nov. 27, 1942.

252

Charles Ferguson, C. H. Wilson and T. C. Cochran for appellant.

Waller & Threlkheld and David H. Postlethweight for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Reversing.

Dr. F. W. Nunn, prior to his death in 1935, owned 120 acres of land adjacent to the reservoir of the Marion Water system which appellees, his widow and children, inherited and were in possession of, when in September, 1939, an employee of the city set fire to brush near the reservoir which spread to their property, and destroyed fruit trees and growing crops.

In action for damages judgment went for plaintiffs on a verdict awarding $7,396, from which appeal is prosecuted. In pleading it was alleged that the city was at the time operating the plant in proprietary and not governmental capacity; that its employees "negligently and carelessly built a fire upon its property and so permitted the fire to escape and burn over lands of the plaintiff," damaging 1,733 apple trees of the reasonable value of $15,000, and crops of the value of $300, and other property. The total sought to be recovered was $17,000.

Demurrer to petition and amendment, and motions to make more definite, were overruled; appellee in answer denied all allegations of plaintiff's pleadings, except ownership of the land. In a second paragraph the city plead contributory negligence on the part of appellees by suffering their adjacent premises to grow up in combustible vegetation, and failure to cut the same caused the burning of the property.

We shall deal with this and other defensive pleas, and the court's rulings later. The court sustained demurrer to paragraph 2 (contributory negligence) and 3 (Section 157 Constitution). Demurrer to paragraph 4 (independent contractor and action of Bennett) was overruled. Plaintiffs withdrew their demurrer to paragraph 5, (authority) and moved to strike parts therefrom. Plaintiffs in amendment showed that Bennett was an officer or employee of the city, charged with utility supervision, about which, and the capacity of the city, there is no doubt.

Plaintiffs denied the allegations of so much of the answer as was left intact, raising the issue as to whether or not at the time of the fire Bennett was acting beyond authority, or at the direction of an independent contractor; this and other denials, with some immaterial affirm-

ative pleading, met with rejoinder, completed issue.

Bennett was working as superintendent in September 1939; Mulligan, independent contractor, was dredging the reservoir. Bennett said he had no duties to perform "in connection with dredging the lake." At the time of the fire the lake was dry and the city was obtaining its water supply elsewhere. Bennett was around the lake on the morning of the fire, and one of Mulligan's employees asked him to set fire to a brush pile, and he did so. This brush was on the north bank of the lake, 10 or 15 feet from "anything dry at all, and did not reach into the grass, nor were there any loose leaves around; the bank was free from dry growth or stubble." He set the fire and remained at the point until he believed the brush was nearly burned out, then walked up the lake about 200 yards. While he was gone the wind got up and set fire to "this grass." He and others endeavored to control the fire, but the wind kept getting higher, and they lost control.

The brush pile was composed of cuttings from willows. He said he took care to see that there was no combustible material near the brush pile. Mulligan's employees were working with the drag line and wanted the brush out of the way; the dredging work was supervised by Mulligan's employees, though Bennett said that he had ordered the willows cut and piled on the bank, and that he had previously burned brush "when it was perfectly quiet."

The greater volume of plaintiff's evidence went to the extent of damage done, and much to the question as to what was the authority of Bennett as superintendent, and as to the exercise of authority beyond its scope. Without further discussion we are thoroughly satisfied that there was sufficient proof to take the case to the jury on the question of negligence, and as to whether it was the city's or independent contractors' negligence, on which subjects correct instructions were given.

It is complained that the court erred in overruling demurrer to the petition because the petition stated no facts which would constitute negligence on the part of the city. The charge was that the fire was negligently started on the city's property, and negligently and carelessly permitted to burn across its land, until it reached and burned appellee's property.

It is a rule of pleading that a charge in general terms that injury was caused by the negligence of another is sufficient. Lipscomb v. Cincinnati N. & C. St. Railway Co., 239 Ky. 587, 39 S. W. (2d) 991; Bryant v. Ellis, 222 Ky. 272, 300 S. W. 610; City of Louisville v. Bailey's Guardian, 262 Ky. 486, 90 S. W. (2d) 712.

Complaint is made of the ruling on the contributory negligence plea. The general rule in actions of this sort is that one is only bound to use ordinary care and prudence, and is not required to look ahead and provide against the act of another in negligently allowing the escape of fire by which his property is destroyed. Louisville & N. R. v. Beeler, 126 Ky. 328, 103 S. W. 300, 11 L. R. A., N. S., 930, 128 Am. St. Rep. 291, 15 Ann. Cas. 913; Big Sandy & K. R. R. Co. v. Allen, 222 Ky. 527, 1 S. W. (2d) 964; Cincinnati N. O. & T. P. R. Co. v. Cecil, Ky., 90 S. W. 585; Cincinnati N. O. & T. P. R Co. v. Barker, 94 Ky. 71, 21 S. W. 347. The application of the rule here is obvious. We need say little as to the court's ruling on the plea based upon the provisions of Section 157 of the Constitution, nor as to other dilatory motions.

Counsel emphasizes the objection to the testimony of certain experts who testified to the extent of damages. The chief objection here is that the experts, or some of them, were permitted to testify as to original cost, care and replacement costs. We find no case holding that such testimony is competent, since in our jurisdiction (which differs from that of other jurisdictions) the rule is as follows: The value of fruit bearing trees is to be measured by their reasonable value as growing trees upon the premises at the time of destruction; in other words such a sum should be awarded as will fairly and reasonably compensate the owner for being deprived of the trees for their intended use; what they were worth on the premises in their growing state at the time of injury or destruction.

With the exception stated, we find generally that the expert testimony was admissible, though the expert should at all times base his conclusion on facts, or upon hypothetical questions based on proven facts. As to the objections to remarks of counsel made in argument to the jury, we find some that were objectionable, and many which did not in anywise attempt to get before the jury the real issue, or the facts upon the issue; a recital would

carry the opinion to too great length. If it were not for the fact that we find reversible error in another respect, we would be inclined to go into this question more thoroughly, and have little difficulty in concluding that some remarks were prejudicial. This should serve as a definite warning to be observed on a retrial of the case, and might apply as well to the too numerous spirited colloquies taking place in the presence of the jury.

We are convinced that the damages were excessive, since it may be gathered from proof that the sum awarded was very near to the highest values fixed by the owners on the entire 120 acres of land. The jury may have been too much impressed by the values fixed by experts, and confused by the entangled situation which evolved as to the admission and rejection of testimony relative to value of the tract before and after the injury, including assessed valuations. That such latter testimony is competent seems to be fairly well settled even in those jurisdictions which do not adopt the New York rule as the criterion; 25 C. J. 604, 15 Am. Jur. 529; Louisville & N. R. Co. v. Home Ins. Co., 146 Ky. 281, 142 S. W. 398; Beeler case, supra.

Experts in their testimony undertook to fix the value of the trees destroyed, and those injured but not entirely destroyed by blocking off the trees according to ages and varieties; this was particularly true as to Mr. Morton's evidence, based on some previous knowledge of the orchard, his experiences and inspection. He went into the matter with great particularity, though possibly not so as to sufficiently differentiate between the value of trees totally destroyed, or so injured as to be thus classified, and such as were merely injured. He valued first by blocks and then by trees, and fixed the total at something like $16,000. The orchard covered about 45 acres, and as estimated by various witnesses, 1,700 trees were destroyed or injured.

It is unnecessary to go further into this proof, except to say that it contained incompetent evidence as to the care that was necessary to give to fruit growing trees, and comparisons with foreign orchards. Witnesses for the defense, some of whom did not measure up in expert qualifications to plaintiff's witnesses, but familiar with various orchards, including the one in question, and the growing and marketing of fruit, minimized the damage, likewise the number of trees destroyed or injured.

Some say the orchard was not in producing condition, and it may be gathered from other testimony that to some extent this was true, and that it showed a lack of proper care, and that some of the trees had died because of natural diseases.

These witnesses were permitted to fix the damage by estimating the value of the farm prior to and following the fire, "taking into consideration the improvements and what orchard was left," and in this way one witness fixed the damage at $3,696; on cross-examination this witness, who had gone through the orchard after the fire, and had used the block system, finally fixed the value much higher. The court refused to allow one witness who had inspected after the fire, and who had some experience in fruit growing and qualified sufficiently to estimate values of land, to testify on the subject because not sufficiently qualified as an expert. Avowals were made fixing the value of the farm after the fire at $4,500. Other witnesses apparently qualified as to value of fruit trees and land, were not permitted to estimate the value of the tract before and after the fire, or to estimate damages.

Our conclusion that the verdict was excessive is based somewhat on some proof which was admitted, and some rejected which should have been admitted as to the value of the farm in the estimation of the owners. The son, chief witness for the plaintiffs, and who was an expert, testified at length. We may glean from his testimony that he was not impressed strongly as to the practical value of the orchard. He made admission which would lead to the belief that its abandonment as a commercial proposition had been contemplated. He was unable to, or he did not produce any proof showing sales or profits for any preceding years.

There was much confusion upon the introduction of proof relative to the estimated value of the farm as a whole. After pages of objections and colloquies, defendants were allowed (and properly so) to introduce proof of assessments for several years prior to the year of the fire. In 1935-6 and 7 the whole surface was assessed at $3,000, and $1,000 improvements. The court would not permit the lists for 1938-39 to be introduced, but they were in the record under avowal, and show that for each of these years the surface was valued at $2,700, and improvements $800.

The controversy as to the propriety of admission for the years 1938-39 arose over some question as to whether or not Mrs. Nunn, or some of the heirs, had given in or signed the assessment list. See Fishback Trucking Co. v. Jackson, 289 Ky. 235, 158 S. W. (2d) 423. That it is competent in this class of cases to show the assessed value as a circumstance to be considered in fixing damage to property is shown by the Fishback case, supra, Norfolk & W. R. Co. v. McCoy, 276 Ky. 573, 124 S. W. (2d) 777; Com. v. Powell, 258 Ky. 131, 79 S. W. (2d) 411; Com. v. Combs, 244 Ky. 204, 50 S. W. (2d) 497.

In addition it was shown that the farm was under mortgage to some governmental agency, and the financial officer while permitted to say that the farm was under mortgage, was not permitted, except by avowal to say that shortly before the fire there had been an offer to give up the tract for a $7,000 consideration. One real estate dealer was not permitted to fix before and after values, except by avowal fixing relative values at $6,500 and $5,500. The farm was listed for sale with him at $8,500, less his commission. It was also listed at the same figures with other real estate dealers. Mrs. Terry testified that Mrs. Nunn had offered the farm to her before the fire for $7,500. This last class of testimony was competent.

We are also convinced that the instructions of the court were in some measure prejudicial. There was no instruction on the matter of damage to fencing or storehouse, nor was any asked by plaintiff; the court rejected all instructions offered by both plaintiff and defendant, and instructed the jury first correctly, setting up the matter of liability of the city for the injury, followed by this instruction on measure:

"If the jury in their verdict find for the plaintiff under instruction No. 1, you will award such sum in damages as the jury may believe from the evidence will reasonably compensate the plaintiffs for any fruit trees killed by said fire, and for the difference in the reasonable market value, if any, just before and after the fire of any of the fruit trees damaged by said fire, but not killed, and for the reasonable market value of any other vegetation injured or destroyed by said fire on said premises, but your finding in all should not exceed the sum of $15,000, the amount claimed in the petition."

From what has been said it is apparent that the instruction, as a whole, was not so prejudicial, except in one particular, that is, the maximum limitation fixed by the court. With regard to the measure fixed for trees completely destroyed, the instruction comports with the rule in the Beeler case, supra. With respect to such trees as were injured or damaged, but not killed, the measure should be the difference in the reasonable value of same just before and after the fire; the phrase "market value" should be omitted since it is obvious that growing fruit trees have no such value. As to such crops as have been severed and destroyed the measure is the reasonable market value "at the time of destruction." As to growing crops, the measure would be the reasonable market value less expenses of maturing and marketing. Instead of the use of the words "of any other vegetation," the instruction should specify the crops proven to have been destroyed or injured.

The court in fixing the maximum limitation used the figures, $15,000, the amount fixed in petition less some items not proven. While this is used in most damage cases as the measure, in the case before us we cannot agree that it should be the true criterion, since there is some proof that the value of the entire farm prior to the fire was around $7,500. Since the fire there is left the entire farm with improvements, and admittedly a portion of the orchard. While the verdict was for an amount equal to, or perhaps greater than some values fixed, it was shown or attempted to be shown, that after the fire the farm was worth around $5,500 or $6,000.

While adhering to the rule in the Beeler case, supra, it may be as argued, that in cases of this kind where the showing is, as was here, the destruction of a great portion of a 46-acre orchard, that what is mentioned in the Beeler case as the "New York" rule, and which prevails in many other jurisdictions, might be a logical way to meet the measure, that is by treating the damage as if it were the taking of property under the law of eminent domain (condemnation of private property for public use). However, the rule in the Beeler case existed prior thereto, and has been followed in cases since the rendition of that opinion. Nevertheless we are of the conviction that here we are fully justified in applying a portion of the rules laid down by this court so frequently in condemnation proceedings, to the effect that the damage awarded

should in no event exceed the difference in the fair market value of the entire tract just before the damage, and the fair market value of what is left. Louisville & N. R. Co. v. Burnman, 214 Ky. 736, 284 S. W. 391; Terhune v. B. W. Gorham & Co., 229 Ky. 229, 16 S. W. (2d) 1060, and the Court should so instruct the jury.

It is also suggested that in order to reach a fair and just award for damages suffered by the plaintiffs, and as was perhaps intended to have been done by the court, the jury should be instructed to separate in their verdict the awards, if any, for trees destroyed, and such as were injured but not destroyed, and for vegetation destroyed or injured.

We are of the opinion that under all the proof the damages awarded were excessive, and the instructions faulty to the extent indicated, hence the judgment must be reversed for proceedings consistent with this opinion. Questions not discussed or decided are reserved.

Judgment reversed.