**CITY OF LOUISVILLE, etc., Appellants,**

v.

**Beverly M. CHAPMAN et al., Appellees.**

Court of Appeals of Kentucky.

March 24, 1967.

Chapman, in which she was riding, and a police cruiser of the City operated by appellant Charles Mayer. Admittedly Mayer disregarded the red traffic light as he proceeded north on 22nd Street to answer an emergency call. The Chapman car was traveling east on Hill Street.

The jury trial resulted in a verdict for $101,305 to the estate of Miss Smith and a verdict for $1610 in favor of Mrs. Chapman. Mayer and the City appeal.

For some seconds before and at the time of the collision, Chapman had a green light. She had her windows closed and the wind was blowing. There were buildings along all four points of the intersection. She testified she did not hear the siren of the police cruiser or see its rotating signal lights until within a few feet of the collision. At the time and previous to the collision, the siren was sounding and the signal lights were flashing.

Of the six grounds relied on by appellants, only two will be discussed. One relates to the instructions and the other to claimed municipal immunity to tort actions.

Before reaching the objection to the instructions, we review the duties of the two operators of the vehicles involved in the collision.

First to the duties of the operator of the emergency vehicle. KRS 189.320 provides such vehicles "shall have the right of way *with due regard to the safety of the public.*" (Emphasis added.) KRS 189.080(2) designates required equipment for emergency vehicles. KRS 189.390(6) exempts emergency vehicles from speed regulations when answering an emergency and provides for visibility of signal lights of at least 500 feet in normal atmospheric conditions, but this section concludes with this admonition of safety:

"This provision shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the street, nor shall it protect the driver of

---

Eugene H. Alvey, Chester A. Vittitow, Jr., Louisville, for appellants.

Theodore Wurmser, Louisville, for appellees.

HILL, Judge.

Nineteen-year-old Judith Smith was killed February 14, 1963, at the intersection of 22nd and Hill Streets in Louisville, Kentucky, as a result of a collision between the automobile operated by Beverly M.

any such vehicle from the consequence of a reckless disregard of the safety of others."

By general ordinance 331.21 of the City of Louisville, it is provided:

"Authorized emergency vehicles shall comply with the provisions of this Traffic Code regulating the movement, stopping and parking of vehicles:

"(a) Provided, however, that the operator of any such vehicles performing emergency duties *so long as he does not endar.ger life or property* may exceed the lawful speed limit, disregard regulations governing direction of movement or turning in specified directions and park or stand notwithstanding the provisions of this Traffic Code; and,

"(b) Provided that * * * operators of any vehicle of the Police Division in answering emergency calls * * * may proceed past a red or stop signal or stop sign but only after *slowing down as may be necessary for safe operation.*" (Emphasis added.)

In addition to the general duties imposed upon appellee Chapman by Chapter 189 of Kentucky Revised Statutes, Louisville general ordinance 331.22 required that "the operator of all vehicles shall yield the right of way" to emergency vehicles. But in Gasparac v. Castle, Ky., 330 S.W.2d 111, 113 (1965), the duty to yield was qualified as follows:

"Notice and warning to persons required to yield the right of way is essential, and a reasonable opportunity to yield or get out of the way is necessary before they become chargeable with the obligation to give preference to the emergency vehicle. There must be strict observance of the conditions which will exempt an emergency vehicle. When a driver has the preferred right of way, he must be especially alert when he intends to run a red traffic light at a busy street intersection and must take care commensurate with

the serious consequences that might follow his failure to do so."

■ .With these duties in mind, we turn now to a consideration of Instruction 2 objected to by appellants. Instruction 2-d required the operator of the police car to: "(O)bserve traffic regulations governing the flow of traffic at that time and place." This was improper and prejudicial. It was in effect a directed verdict for appellees. We think the jury had a right to, and no doubt did, interpret "observe traffic regulations" to mean to obey traffic regulations, such as observing stop and go signal lights. Instruction 4 required appellant Mayer to sound his horn, to exhibit a red flasher light, and to drive with due regard to the safety of the public; but nowhere in the instructions was the jury told that Mayer had a right to run a red light by exercising due regard to the safety of the public. Instruction 4 did not cure the defect in 2-d or supply the necessary qualification of the duty imposed in 2-d.

■ Appellant City of Louisville, a city of the first class, earnestly urges that the rule of law announced in Haney v. City of Lexington, Ky., 386 S.W.2d 738, 10 A.L.R. 3d 1362 (1964), violates Section 233 of the Constitution and many decisions of this court prior to Haney. Chambers v. Ideal Pure Milk Co., Ky., 245 S.W.2d 589 (1952) and other cases are cited.

In Haney this court said, "In determining the tort liability of a municipality it is no longer necessary to divide its operations into those which are proprietary and those which are governmental." We reaffirm our holding in Haney. It should be stated, however, that neither in Haney nor in the present case do we intend to impose liability on municipalities in the exercise of legislative or judicial or quasi-judicial or quasi-legislative functions.

■ A further word is appropriate to dispose of appellants' insistence that section 233 of the Constitution of Kentucky is a

constitutional bar to this action. Appellant reasons that the rule in Haney does not apply to the facts of the present case by reason of the difference in the municipal functions in the two cases, and that inasmuch as Haney did not discuss section 233 of the Constitution, this court should do so in the present case.

We discern no justifiable reason for making a distinction between the application of the rule in Haney and the facts of the present case.

The writers of the Constitution in dealing with governmental immunity (a product of the common law) stated in section 233 that the common law "shall be in force within this State until they shall be altered or repealed by the General Assembly." But the common law is not now, nor was it ever, a static body of the law. It (the common law) may be likened to a mighty rising river. It may and it must spill over into new fields and new territory in order to make its way to the sea. This identical question was before the supreme court of the state of Illinois in Amann v. Faidy, 415 Ill. 422, 114 N.E.2d 412 (1953), except that in the Amann case a statute was involved, whereas in the present case a section of the Kentucky Constitution is in focus. We could not hope to improve upon the language of the renowned Justice Schaefer in the Amann case, from which we quote:

"What the statute adopted was not just those doctrines which happened to have already been announced by English courts at the close of the Middle Ages, but rather a system of law whose outstanding characteristic is its adaptability and capacity for growth. The common law which the statute adopted 'is a system of elementary rules and of general judicial declarations of principles, which are continually expanding with the progress of society, adapting themselves to the gradual changes of trade, commerce, arts, inventions, and the exigencies and usages of the country.' Kreitz v. Behrensmeyer, 149 Ill. 496, 36 N.E. 983, 984, 24 L.R.A. 59.

"In rejecting the contention upon which the defendant now insists, this court pointed out more than a hundred years ago, 'that if we are to be restricted to the common law, as it was enacted at fourth James, rejecting all modifications and improvements which have since been made, by practice and statutes, except our own statutes, we will find that system entirely inapplicable to our present condition, for the simple reason that it is more than two hundred years behind the age.' Penny v. Little, 3 Scam. 301, 304."

We do not think the framers of our Constitution intended to shackle the hands of the judicial branch of government in its interpretation, modification or abolition of the great body of mutable common law to meet the demands of changing times.

Municipal functions have become so varied and extensive that public safety demands that municipal employees be held to the same safety standards as other citizens. Private citizens voluntarily and for good economic reasons insure themselves against tort liability. Why shouldn't a collection of citizens classified as a municipality do likewise?

We reverse the judgment with directions to grant appellants a new trial. This conclusion makes it unnecessary to discuss the four remaining questions raised by appellants.

WILLIAMS, C. J., and MILLIKEN, OSBORNE, and PALMORE, JJ., concur.

MONTGOMERY, J., not concurring.

STEINFELD, J., not sitting.