Lyman E. WAGERS et al., Appellants,

v.

FRANTZ, INC., Appellee.

Court of Appeals of Kentucky.

May 16, 1969.

Rehearing Denied Oct. 31, 1969.

**454**

E. R. Denney, Daniel N. Brock, Brock & Brock, Lexington, for appellants.

S. M. Nash, Jr., Lexington, Rudy Yessin, Frankfort, for appellee.

DAVIS, Commissioner.

Dr. and Mrs. Lyman E. Wagers sought damages against Frantz, Inc., a plumbing contractor, based on their claim that an employee of Frantz negligently started a fire while setting a washbasin in a partially completed apartment house being constructed by the Wagerses. The jury found for Frantz. The Wagerses appeal from the judgment on that verdict asserting that (1) Frantz was guilty of negligence as a matter of law; (2) it was error to admit evidence relating to safety regulations; (3) the Wagerses were free of contributory negligence; (4) erroneous instructions were given; and (5) the court erred in rejecting competent proof offered by the Wagerses respecting damages for loss of rental.

On December 27, 1965, a partially completed apartment building owned and being constructed by the appellants was substantially damaged by fire. Charles Currens, a journeyman plumber employed by Frantz, was setting a washbasin in a bathroom on the ground floor of the building. His duties included soldering which required the use of a Prestolite torch equipped with a No. 3 tip. As Currens was proceeding with his task, a fellow employee working in the same bathroom called his attention to a fire at the point where Currens was working. Currens said that he had just "got through and laid my torch down, turned it off and put it behind me" when the other workman called his attention to the fire. Currens said he used a screwdriver to knock away some of the smoldering dry-wall paper and in doing so opened a small passageway into the pipe chase containing the already stubbed-in waste pipe. Then Currens dispatched a fellow worker to call the fire department and to see if he could get some water to quench the fire. While his coemployee was on that mission, Currens made a larger hole in the wall "to see if I could reach in there and get the fire, but when I did it was completely out of hand and at that time I told this other

boy to go upstairs and maybe we could put water to it from upstairs, but as I testified before when we got upstairs the wall had turned black and was sort of smoldering and you could hear the flames at that time." Currens estimated "somewhere about two minutes, maybe a few seconds over" elapsed while he enlarged the opening and before he went upstairs.

There was contrariety in the evidence as to Currens' handling of the torch. In a pretrial deposition he said that the flame of the torch was five inches, although he undertook to explain that testimony at the trial. He conceded that using a five-inch flame in such proximity to the wall would be dangerous. Frantz presented a motion picture portraying Currens using the same type torch in installing the same type lavatory, purporting to simulate the conditions which had obtained at the site of the fire. Comments in the record suggest that even in this film Currens was directing the flame toward the wall rather than away from it, although he testified that the proper way to use the flame was to direct it away from the wall and that he had so directed it at all times. Currens said there was no fire in the wall before he undertook his procedure. There was opinion evidence for the Wagerses by an experienced major of the Lexington Fire Department that the fire was ignited by the torch used by Currens. As noted, evidence adduced for Frantz was to the contrary.

Frantz introduced provisions of a Lexington ordinance, the pertinent portions of which are:

"921.1. Where Required.—Firestopping shall be designed and constructed to close all concealed draft openings and to form effectual fire barriers against the spread of fire between stories of every building and in all open structural spaces therein, including the following locations: for the subdivision of attic spaces in section 219; for combustible wall, partition and floor framing in section 877; for ceiling spaces in section 913; for open spaces behind acoustical and other finishes in section 923; for floor sleeper spaces in section 924; for pipe, duct and flue openings in section 1119 and for fire dampers and curtains in section 1812.

"921.2. Firestopping Materials.—All firestopping shall consist of noncombustible materials including asbestos, brick, terra cotta, concrete, fibrous glass, gypsum, mineral wool, rock wool, steel, iron, metal lath and cement or gypsum plaster, formed steel of not less than No. 20 U.S. gage, or other approved noncombustible materials, securely fastened in place; except that firestops of two (2) thicknesses of one (1) inch lumber with broken lap joints or of two (2) inch lumber installed with tight joints shall be permitted in open spaces of wood framing.

"921.3. Inspection of Firestopping.— No firestopping shall be concealed or covered from view until inspected and approved by the building official."

Frantz introduced other evidence reflecting that building regulations of Lexington require that the responsibility for the design, plans, and specifications for a residential structure containing more than twelve bedrooms be entrusted only to an architect or a professional engineer registered in Kentucky. It was shown that Dr. and Mrs. Wagers did not engage an architect, although they obtained plans from an engineer. No specifications were ever compiled; the plans were submitted to the building inspector's office of Lexington who furnished a building permit without comment as to any failure to comply with the pertinent requirements of the applicable regulations.

It was shown that the Wagerses were required to expend more than $40,000 to repair the fire damage. It is their contention that Frantz is liable for this damage. Frantz contends that it was not negligent

at all, but if it were, the contributory negligence of the Wagerses in violating the safety regulations bars any right of recovery.

It has been held frequently that violation of a statute, ordinance, or regulation is negligence *per se* if the violation causes or contributes to the accident. However, it has been held also that such violation is not actionable unless the violation was a proximate or contributing cause of the accident. See Bluegrass Restaurant Company v. Franklin, Ky., 424 S.W.2d 594.

██ It is generally recognized that the harm occasioned incident to violation of a statute must be that type of harm which the statute was intended to prevent before its violation becomes actionable negligence. Prosser on Torts, Third Edition, Section 35, page 196; Phoenix Amusement Company v. White, 306 Ky. 361, 208 S.W.2d 64.

As observed in Prosser on Torts, Third Edition, Section 35, pages 204, 205, the violation of a statute by a plaintiff presents a somewhat different problem from that presented when the defendant is the violator, although Prosser states:

"The accepted rule now is that a breach of statute by the plaintiff is to stand on the same footing as a violation by the defendant. A few courts have held that the plaintiff's breach does not constitute contributory negligence as a matter of law, upon the ground that the statutes were enacted for the protection of others, and not of the actor himself. But it seems clear that safety statutes, such as speed laws and traffic rules, usually are designed for the broad purpose of preventing accidents or dangerous situations, in which the plaintiff is quite as likely to be hurt as the defendant; and it is not difficult to discover a purpose to protect him by setting up a standard of his own conduct, the unexcused violation of which is negligence in itself."

██ It is well recognized that a plaintiff is not guilty of contributory negligence for his failure to guard against a danger which he has no reasonable cause to apprehend. As stated in Beam v. Calvert, Ky., 277 S.W.2d 35, 37:

"It is true one is required to foresee and provide against what usually happens and what is liable to happen, but one is not bound to guard against what is unusual and unlikely, or what, as it is sometimes said, is only remotely probable."

Another phase of the problem confronting us is whether Frantz falls within the class of persons for whose protection the safety regulations were designed. It seems clear that the safety regulations envision a completed building and have the primary purpose of protecting persons rightfully using the building, with a corollary purpose of safeguarding the property itself as well as adjacent properties. It is doubtful that the safety regulations evince any legislative or administrative intent to protect workmen engaged in the construction of a building. Be that as it may, it is extremely difficult to conclude that Frantz may take refuge in the Wagerses' failure to provide fire stops in face of Frantz' knowledge that the fire stops were not installed when it used the torch.

In 35 Am.Jur.2d, Fires, Section 30, pages 610, 611, it is said:

"Ordinarily, the plaintiff is not guilty of contributory negligence in failing to foresee and provide against the negligence of another in setting or allowing the escape of fire by which his property is injured or destroyed."

Cited in support of that statement is City of Marion v. Nunn, 292 Ky. 251, 166 S.W. 2d 298, in which this court held that the defense of contributory negligence was not available on the theory that:

"* * * one is only bound to use ordinary care and prudence, and is not re-

quired to look ahead and provide against the act of another in negligently allowing the escape of fire by which his property is destroyed." Id. 166 S.W.2d 300.

Compare Louisville & N. R. Co. v. Beeler, 126 Ky. 328, 103 S.W. 300, 11 L.R.A.,N.S., 930, 128 Am.St.Rep. 291, 15 Ann.Cas. 913, in which this court held that contributory negligence of a plaintiff, in permitting land to grow in combustible weeds and brush, was not available as a defense in an action against a railroad which had negligently ignited a fire. The rationale expressed was that the landowner owed no duty to the railroad in this respect.

As we construe the safety regulations, they were not primarily intended to prevent the *ignition* of fire so much as to guard against the rapid spread of it. The Wagerses could hardly be contributorily negligent in failing to guard against the allegedly negligent ignition of the fire by Frantz' employee. Moreover, as we have observed, it would be anomalous to afford Frantz succor by reason of the alleged violation of the safety regulations inasmuch as Frantz clearly did not rely on their having been observed. As an example, if a plumber entered a service station and observed an open barrel of gasoline maintained there contrary to a safety ordinance but proceeded, nevertheless, to ignite a blow torch in such proximity to the barrel as to start a fire, the service-station operator should not be barred from recovery on account of the consequent damages by reason of his violation of the safety ordinance. His negligence was completed; it created a dangerous condition of which the plumber was fully aware. The plumber's conduct in proceeding anyway is the active cause of the damage.[1]

From all the foregoing, we conclude that the defense of contributory negligence is not available to Frantz in the circumstances of this case. It follows, therefore, that the trial court committed prejudicial error in receiving over Wagerses' objection evidence concerning the safety regulations and of their violation by the Wagerses. Similarly, it was error for the court to instruct the jury that it should find for Frantz if it believed the Wagerses were contributorily negligent in failing to comply with the safety regulations.

We find no merit in the contention that Frantz was guilty of negligence as a matter of law, since there was substantive evidence reflecting absence of negligence on its part and a jury issue was created. Neither are we persuaded, as argued by Frantz, that the Wagerses were guilty of such negligence as would as a matter of law preclude their recovery.

The Wagerses complain further that the trial court rejected evidence as to their loss of anticipated rental occasioned by the fire damage. It developed that the Wagerses had verbal commitments to rent several apartments which they said would have been occupied within a few days had the fire not intervened. The trial court reasoned that because there were no written leases the Wagerses could not assert damages for such loss of anticipated rental. This was error. There was an abundant showing that a demand for such apartments existed, and in fact, it was shown that as soon as the damages were repaired all available apartments were promptly rented. In our view, this loss of anticipated rent was sufficiently proven to warrant its submission as an item of damages. See

---

1. It may be reckoned that the failure to provide draft stops precipitated the rapid spread of the fire so that it becomes unrealistic to impose liability on Frantz for the entire loss. However, we do not regard this case as one giving rise to the doctrine of "avoidable consequences," but if it were, we think the apportionment of damages would be too speculative to admit of determination by a jury. See Prosser, Law of Torts, Third Edition, Section 65, page 433.

22 Am.Jur.2d, Damages, Section 155, pages 223, 224, where it is written:

"Courts have approved several methods for measuring damages for loss of use. One method which has received wide approval is to award the rental, or, as it is sometimes called, the 'usable' value, of the property. Rental or usable value is the amount for which the property in question could have been rented on the market. Thus, under this rule, rental value of property used for business purposes means, not the conjectural or even probable profits which might accrue to the plaintiff from his business, but the fair rental value of the premises in the open market."

The judgment is reversed for further proceedings consistent with the opinion.

MONTGOMERY, C. J., and EDWARD P. HILL, MILLIKEN, PALMORE and STEINFELD, JJ., concur.

OSBORNE and REED, JJ., concur in result only.