**Roy CARMICHAEL and Ruth Carmichael, Appellants,**

v.

**LEXINGTON–FAYETTE URBAN COUNTY GOVERNMENT and Howard K. Bell Consulting Engineers, Inc., (a Kentucky Corporation) and T. M. Regan, Inc., (a Kentucky Corporation), Appellees.**

Court of Appeals of Kentucky.

Oct. 31, 1980.

David A. Weinberg, Lexington, for appellants.

Ralph F. Kessinger, Harbison, Kessinger, Lisle & Bush, James D. Ishmael, Jr., Brown, Sledd & McCann, Lexington, for appellees.

Before COOPER, LESTER and WINTERSHEIMER, JJ.

COOPER, Judge.

This is an appeal from a summary judgment dismissing appellants' complaint which alleged negligence on the part of the appellees, and sought damages for injuries sustained as the result of appellees' negligence in conducting a smoke test of the sewer system. The issues are: (1) whether the appellants' violation of the state's plumbing code by not having their washing machine trapped was contributory negligence per se authorizing the granting of a summary judgment against the appellant as a matter of law; (2) whether the trial court erred in ruling the appellant, Mr. Carmichael, to be contributorily negligent as a matter of law regarding his reaction and actions upon the entry of smoke into his residence; and (3) whether the trial court erred in ruling that the Lexington–Fayette Urban County Government had governmental immunity in this case. We affirm the trial court.

The appellants, Roy and Ruth Carmichael, filed an action against the appellees, Howard K. Bell Consulting Engineers, Inc., and T. M. Regan, Inc., (hereinafter referred to as Bell–Regan) and Lexington–Fayette Urban County Government (hereinafter referred to as L.F.U.C.G.). Bell–Regan were employed by L.F.U.C.G. to conduct a comprehensive study of a sanitary sewer system to determine its overall condition and evaluate ways to improve service. To accomplish such, Bell–Regan smoke tested L.F.U.C.G.'s sewer lines to detect any break therein, and to locate any roof downspouts connected into the sanitary sewer system.

When the sewer lines were smoke tested in the area of the appellants' residence, the smoke escaped from the sewer lines into the residence through an untrapped washing machine drain in the laundry room. Mr. Carmichael had assisted his non–plumber friends in the installation of the untrapped drain in 1977. He was the first to notice the smoke coming from the laundry room. Mrs. Carmichael then came to investigate,

noticed the smoke coming from the laundry room, and asked her husband not to enter. He did not heed her advice, but entered the laundry room and became engulfed in the dense smoke. As a result thereof, Mr. Carmichael, who had prior respiratory problems, became quite ill from the inhalation of the smoke. Thereafter, Mr. Carmichael was admitted to the Good Samaritan Hospital on July 18, 1978, where he remained until July 21, 1978.

The state plumbing code reads in pertinent part as follows:

Section 3. Traps, where required. Each fixture shall be separately trapped . . . 401 KAR 1:080.

A washing machine is a fixture under the code, 401 KAR 1:1010, § 1 (125) (127). Therefore, the untrapped drain was in direct violation of the code. The smoke would not have entered the Carmichaels' home if the washing machine drain had been trapped. The purpose of such traps is expressly set forth in 401 KAR 1:080:

*Traps and Cleanout. Necessity and function.* This regulation relates to the quality, location and the placing of traps and cleanouts to prevent harmful gases and odors from entering homes that are served by plumbing systems.

Obviously, the applicable provision of the code is to protect homeowners, such as the appellants, against the risk of the type of harm which has in fact occurred as a result of the unexcused violation.

It is clear that the violation of an ordinance by a plaintiff, if that violation causes the type of harm which the statute was intending to prevent, is negligence per se. *Wagers v. Frantz, Inc.,* Ky.App., 445 S.W.2d 453 (1969). The Court in *Wagers* quoted Professor Prosser on *Torts,* 3rd Ed. § 35 pp. 204–205 as follows:

The accepted rule now is that a breach of statute by the plaintiff is to stand on the same footing as a violation by the defendant. A few courts have held that the plaintiff's breach does not constitute contributory negligence as a matter of law, upon the ground that the statutes were enacted for the protection of others, and

not of the actor himself. But it seems clear that safety statutes, such as speed laws and traffic rules, usually are designed for the broad purpose of preventing accidents or dangerous situations, in which the plaintiff is quite as likely to be hurt as the defendant; and it is not difficult to discover a purpose to protect him by setting up a standard of his own conduct, the unexcused violation of which is negligence in itself. *Wagers* at p. 456.

Under the facts of this case, it is clear that the appellants' untrapped drain was the proximate cause of the smoke coming into the home.

The appellants further contend that the trial court erred in ruling Mr. Carmichael to be contributorily negligent as a matter of law regarding his exposure to the smoke. When he first observed the smoke coming from beneath the laundry room door, his wife had warned him to get out of the house and had stated, "I want you out of here." In direct opposition to his wife's warnings, Mr. Carmichael went into the laundry room, allegedly to find the fire. In spite of his respiratory problems in the past and the warnings of his wife, he opened the door and was engulfed by the smoke. One who voluntarily subjects himself to peril known to him or generally observable by a person of ordinary prudence in his situation cannot recover damages sustained thereby. *Waddle's Adm. v. Brashear,* 257 Ky. 390, 78 S.W.2d 31 (1935). Ordinary prudence in care for one's own safety requires that one cannot walk blindly into a danger which is obvious to him. *Taustine's Ex'r v. B. & B. Novelty Co.,* 305 Ky. 514, 204 S.W.2d 938 (1947).

The last issue raised by the appellants concerns the immunity or the liability of the government while functioning as a municipality. Providing and maintaining a sanitary system is an inherent part of the carrying out of the functions of government. L.F.U.C.G. was therefore engaged in a municipal function which affected all members of the general public. It did not single out and deal with the appellants on

an individual basis. *Frankfort Variety, Inc. v. City of Frankfort*, Ky., 552 S.W.2d 653 (1977).

The judgment is affirmed.

All concur.