GAS SERVICE COMPANY, INC., Movant,

v.

CITY OF LONDON and London Utility Commission, Respondents.

Supreme Court of Kentucky.

March 21, 1985.

1. KRS 394.540, effective date after execution of joint will, hence not considered.

Robert L. Milby, Hamm, Milby & Ridings, London, for movant.

William R. Patterson, Landrum & Patterson, Gordon W. Moss, Hays & Moss, Lexington, for respondents.

William A. Thielen, Lexington, for amicus curiae—Ky. Mun. Inc.

LEIBSON, Justice.

This case developed as a consequence of a natural gas explosion that occurred on Fourth Street between Main and Hill Streets, in London, Kentucky, on January 16, 1979, destroying some buildings and damaging others.

A number of persons who sustained damage from the blast filed negligence actions against Gas Service Company, Inc., the movant on this appeal (referred to herein as the "Gas Company"). In turn the Gas Company filed a third party action against the City of London, Kentucky, and the London Utility Commission, its agent (collectively referred to herein as the "City"), seeking contribution and/or indemnity. The Gas Company alleged the City was responsible for installing a system of sewer lines in close proximity to existing gas lines and then later negligently repairing the sewer line so as to cause an ultimate failure in an adjacent gas line. According to testimony taken by deposition the Gas Company was prepared to prove that the City made a faulty repair which, by the process of electrolysis, destroyed the patching plate used on the sewer line and also caused a hole in the adjacent gas line. Ultimately gas thus escaping caused the explosion in controversy.

The Gas Company's liability to the original plaintiffs is not at issue at this point. The trial court granted summary judgment to the original plaintiffs against the Gas Company on the issue of liability, and the jury assessed damages. The issues between the original plaintiffs and the Gas Company have been resolved.

However, the trial court also dismissed the Gas Company's third party complaint for contribution and/or indemnity against the City, on grounds that it was a municipality immune from suit in the circumstanc-

es alleged. The Court of Appeals affirmed this decision. We accepted discretionary review to consider once again the legal morass that has generated around the subject of municipal immunity. We reverse for reasons that follow.

The landmark case in Kentucky on the present status of municipal immunity, written with the intention of being dispositive of this issue, is *Haney v. City of Lexington*, Ky., 386 S.W.2d 738 (1964).

*Haney* supposedly "abrogated the former rule of sovereign immunity for a municipal corporation," making liability the rule. *City of Lexington v. Yank*, Ky., 431 S.W.2d 892, 893 (1968). *Haney* postulates:

"So, once again, we are called upon to examine this legal anachronism of municipal immunity from liability for tort.

. . . .

Even the origin of this doctrine contains some elements of the mysterious. Some writers assume that it is a direct outgrowth of the divine right of the king who could do no wrong. But insofar as municipal or county or local district communities are concerned, it is generally agreed that the application of the immunity doctrine grew out of *Russell v. Men of Devon*, 2 T.R. 667, 100 Eng.Rep. 359 (1788), which involved a tort action against an unincorporated county.

. . . .

It is equally hard to determine how this doctrine became imbedded in the law of our Commonwealth. Apparently we started without it because in *Prather v. City of Lexington*, 52 Ky. (13 B.Mon.) 559, 560 (1852), this was said:

'Where a particular act, operating injuriously to an individual, is authorized by a municipal corporation, by a delegation of power either general or special, it will be liable for the injury in its corporate capacity, where the acts done would warrant a like action against an individual.' "

386 S.W.2d at 739.

*Haney* makes clear that there is *no constitutional basis* for municipal immunity. *Haney* then discusses the development

through case law of "distinctions between functions of the municipal corporation that purportedly were governmental or public and those thought to be proprietary or private, denying liability in the case of governmental functions, but imposing it in situations involving proprietary actions." 386 S.W.2d at 740. *Haney* comments:

"At most, the distinctions seem to be contrived and without sensible basis. That which was proprietary in some states was deemed governmental in others." *Id.*

And, indeed, for proof of this comment we need look no further than the subject matter of the present action, a city's liability for negligence in failure to keep its sewer system in proper repair. In *Prather v. City of Lexington* (1852), quoted in *Haney, supra* at 740, liability for failure to keep "sewers of the city in proper repair" was cited as a prime example of municipal liability. At the time of *Haney* we wrote "[t]he act of constructing a sewer is [regarded as] governmental in nature, with no liability [cases cited], but afterwards, if a negligent act of the city causes the basement of a connecting residence to be flooded, the city is responsible in damages. [Case cited]." *Id.* We further stated:

"We see no reason to belabor this point. We believe that all of these contrived devices [attempts to classify when there is liability for torts of municipal corporations] resulted from the fact that the courts for many years have been repelled by the injustice of the rule of municipal immunity and have attempted to soften its harsh application by seeking a few escape hatches." *Id.*

Yet, since *Haney* we find Court of Appeals cases, including the present one, now classifying negligence in maintenance and repair of sewers as immune from liability, on new grounds presumably deriving from our post *Haney* opinions. See Court of Appeals opinions in *Hempel v. Lexington-Fayette Urban Cty. Gov.*, Ky.App., 641 S.W.2d 51 (1982) and *Carmichael v. Lexington-Fayette, etc.*, Ky.App., 608 S.W.2d 66 (1980). In *Carmichael* and *Hempel* the

earlier liability based on the proprietary classification falls victim to a nebulous new classification designated an "inherent part" or "ultimate function" of municipal government.

It is understandable if the movant in the present case should wonder how we arrived in a situation where he could have recovered for damages from the city's negligent maintenance and repair of the sewer system when municipal immunity was the rule and liability the exception, but can no longer recover now when liability is supposedly the rule and immunity the exception.

In short, with certain narrow exceptions stated in the opinion, *Haney* separates municipal immunity from sovereign immunity and seeks to abolish it. But subsequent decisions have so circumscribed its language that we have regressed beyond its starting point. In *Haney*, and in *City of Louisville v. Chapman*, Ky., 413 S.W.2d 74 (1967), which followed close on the heels of *Haney*, we regarded municipal immunity as a judicially created monstrosity which should be judicially destroyed. Fifteen years later we find that this monstrosity is not only alive and well, but grown to such proportions that it provides immunity for negligence in repair and maintenance of sewers, a function previously regarded as one proprietary in nature and not protected by municipal immunity. See *City of Paris v. Baldwin Bros.*, 169 Ky. 802, 185 S.W. 144 (1916), *City of Frankfort v. Buttimer*, 146 Ky. 815, 143 S.W. 410 (1912), *Toebbe v. City of Covington*, 145 Ky. 763, 141 S.W. 421 (1911) and *Town of Central Covington v. Beiser*, 122 Ky. 715, 92 S.W. 973 (1906), all premising liability for damages on condition of city sewer facilities.

In *Haney* we hold that municipal corporations are no longer "immune from liability for ordinary torts." 386 S.W.2d at 742. We then designate a narrowly defined exception to liability:

"We wish to make it plain, however, that this opinion does not impose liability on the municipality in the exercise of legislative or judicial or quasi-legislative or quasi-judicial functions." *Id.*

To further explain the new rule we add: "We think the scope of abrogation adopted by Wisconsin is a proper one and we adopt it. It is stated in *Holytz v. City of Milwaukee*, 17 Wis.2d 26, 115 N.W.2d 618 [ (1962) ], as follows:

'Perhaps clarity will be afforded by our expression that henceforward, so far as governmental responsibility for torts is concerned, the rule is liability—the exception is immunity.... Our decision does not broaden the government's obligation so as to make it responsible for all harms to others; it is only as to those harms which are torts that governmental bodies are to be liable by reason of this decision.'"

*City of Louisville v. Chapman*, Ky., 413 S.W.2d 74, 76 (1967) follows on the heels of *Haney* and "reaffirm[s] our holding in *Haney*" and the narrow exception for "the exercise of legislative or judicial or quasi-judicial or quasi-legislative functions."

But beginning shortly thereafter in *City of Louisville v. Louisville Seed Co.*, Ky., 433 S.W.2d 638, 641 (1968), while paying lip service to *Haney*[1] we "compromise" its holding with new language raising up the municipal immunity concept like Phoenix from the ashes, language which is at least as difficult to understand and apply as the old, discarded proprietary/governmental dichotomy.

The new rule resurrects municipal immunity "when a claimant seeks to hold the city liable for a risk which is inherently part of the carrying on of the function of government, such as its failure to provide fire protection, police protection or, as here, flood protection." 433 S.W.2d at 643. The court continues:

1. In *Louisville Seed Co., supra* at 640, we state: "It is difficult to perceive how the cause of justice can be advanced by turning back the pages of history. The history of the doctrine of sovereign immunity, as it relates to municipali-

ties, from its inception in 1788 ... to its *demise* in this jurisdiction in 1964 in the *Haney* case, *supra*, was *never* satisfactory." (Emphasis added)

"We refer only to the ultimate failure and not to the situation where the city is engaging in activities with the citizen on a person to person basis as any other private citizen might do." *Id.*

For the next fifteen years the courts of this Commonwealth, ours included, have struggled without success to make legal sense out of this legal jargon. The result can be described at best as unsatisfactory. For instance, in *City of Russellville v. Greer*, Ky., 440 S.W.2d 269 (1969) where the City is accused of having caused an accident by failing to maintain a stop sign, we find no liability. But in *Fryar v. Stovall*, Ky., 504 S.W.2d 701 (1973), where the City is alleged to have been negligent in the manner in which a police officer directed traffic, we hold there is liability. And in *Brown v. City of Louisville*, Ky.App., 585 S.W.2d 428 (1979), where the city was accused of negligently firing "continuous-burn tear gas canisters" into the claimant's place of business, we held that the limitations found in the *Louisville Seed Co.* case applied as a rationale to deny liability.

In *Frankfort Variety, Inc. v. City of Frankfort*, Ky., 552 S.W.2d 653 (1977), we attempted to further explain the *Louisville Seed Co.* case, with no new insight.

A variety of legalisms have been suggested as helpful in understanding the rule in *Haney* as modified by *Louisville Seed Co./Frankfort Variety.* These include duty/no duty and misfeasance/nonfeasance terminology. The abstract resolution of whether there is a duty is invariably result oriented, a question of policy-making involving the weighing of interests and a conclusion based on whether the court's conscience is, or is not, comfortable with the result. Classifying a situation as misfeasance or nonfeasance is much the same. These classifications, like the old governmental versus proprietary classification, in the long-run prove arbitrary pigeonholes for conclusions arrived at intuitively. The

decisions as to whether a given activity is an ultimate function of government, or is not an ultimate function of government, and as to when a negligent act should be considered to impact citizens singly and when collectively, have not been rationally explained, and cannot be.

The concept of liability for negligence expresses a universal duty owed by all to all. The duty to exercise ordinary care commensurate with the circumstances is a standard of conduct that does not turn on and off depending on who is negligent. With a municipal corporation as with all other legal entities, the question is not whether such a duty exists, but whether it has been violated and what are the consequences. Constitutionally, statutorily, or by court decisions, on occasion we excuse the nonperformance of this duty,[2] but no purpose is served by denying its existence.

One of the reasons cited in *Haney* for abrogating municipal immunity is:

"[T]he doctrine runs counter to a basic concept underlying the law of torts, that is, that liability follows negligence." 386 S.W.2d at 739.

*Haney* abolished municipal immunity "for ordinary torts." *Haney*, 386 S.W.2d at 742. It retained immunity only for acts which could be classified as "the exercise of legislative or judicial or quasi-legislative or quasi-judicial functions." *Id.* We are not called upon to abolish municipal immunity. That was done 18 years ago. We are called upon simply to test the courage of the convictions previously expressed by this court. Admittedly, since *Haney* in cases such as *Louisville Seed Co.* and *Frankfort Variety* we have temporized in the name of financial expediency, expressing fears, real or imagined, based on speculation as to the economic impact on municipalities which might result from applying the new rule. We have so retreated that we no longer recognize claims for damages caused by the maintenance and operation

---

**2.** Prof. G. Edward White, U.Va.Law School: "The growth of negligence from the omission of a preexisting, specific duty owed to a limited class of persons to the violation of a generalized standard of care owed to all ensured the emergence of Torts as an independent branch of law." G.E. White, *Tort Law in America, An Intellectual History*, 18 (1980).

of the city sewer system, claims recognized of long-standing and predating *Haney.* But problems with payment has never been a defense to an otherwise valid claim. As we stated in *Hilen v. Hays,* Ky., 673 S.W.2d 713, 718 (1984), where similar considerations were advanced, "[t]o those who speculate that [it] will cost more money ... we say there are no *good* economies in an *unjust* law." (Emphasis original)

The only line drawn against municipal liability for torts in *Haney* was "the exercise of legislative or judicial or quasi-legislative or quasi-judicial functions." 386 S.W.2d at 742. Liability in the fact situations in *Louisville Seed Co.* and in *Frankfort Variety* is not excused by this limited exception. Those cases, and others we have discussed in this opinion applying municipal immunity in reliance on them, are overruled. The functions being carried out by municipal employees in these cases do not qualify for municipal immunity under the doctrine laid down in *Haney.* In such situations if negligence is proved, liability will follow.

However, there are two cases decided since *Haney* that do classify as immune under a reasonable interpretation of the qualifying language of *Haney* which exempts quasi-judicial and quasi-legislative activities as well as the official acts of judges and legislative bodies. They are *Com., Dept. of Banking & Securities v. Brown,* Ky., 605 S.W.2d 497 (1980), the alleged malfeasance of government employees charged with inspection and regulation of American Building and Loan Association and of Prudential Building & Loan Association when they defaulted on their obligations to depositors, and *Grogan v. Commonwealth,* Ky., 577 S.W.2d 4 (1979), the Beverly Hills Supper Club fire disaster in the City of Southgate, where city and state employees were charged with negligent failure to enforce laws and regulations establishing safety standards for construction and use of buildings.

The question is what activities are excluded from the liability in tort imposed on municipal corporations in *Haney* by the exception made for "the exercise of ... quasi-legislative or quasi-judicial functions."? "Quasi," when used as an adjective, is defined in *Webster's Third New International Dictionary* (unabr. ed. 1971), as "having some resemblance (as in function, effect, or status) to a given thing."

■ Our research has failed to produce cases where this terminology is used in the precise context with which we are presently concerned. But *Grogan v. Commonwealth,* the Beverly Hills nightclub fire and *Com., Dept. of Banking & Securities v. Brown,* the building and loan association collapse, are cases where the "government takes upon itself a regulatory function," *Brown, supra* at 498, which is different from any performed by private persons or in private industry, and where, if it were held liable for failing to perform that function, it would be a new kind of tort liability. We deem the limitation expressed in *Haney* by the terms "quasi-judicial and quasi-legislative functions" as directed at the type of regulatory activity represented by *Com., Dept. of Banking & Securities v. Brown* and *Grogan v. Commonwealth.* In these cases the government was not charged with having caused the injury, but only with having failed to prevent it by proper exercise of regulatory functions which have elements appearing quasi-judicial and quasi-legislative in nature.

The present case illustrates the problems in applying the reasoning advanced in *Louisville Seed Co., supra.* In *Louisville Seed Co.* we fashioned an exception to liability for those situations where "the act affects all members of the general public alike" rather than where "the city, by its dealings or activities, seeks out or separates the individual from the general public and deals with him on an individual basis, as any other person might do." *Louisville Seed Co., supra* at 643. The Court of Appeals applies this exception here where it is alleged that the city laid out its sewer lines adjacent to the gas company's gas lines and then proceeded to patch the sewer line in such a manner as to cause a hole in

the gas line. Assuming such facts to be true, it would be difficult to visualize a situation more illustrative of activities seeking out a party and dealing with him on an individual basis.

*Louisville Seed Co.* expresses a concern for protecting taxpayers money from being spent on unauthorized purposes. Here the claimant, the Gas Company, is a public utility furnishing taxpayers with a service no different in kind from sewer service. The Gas Company could claim with equal validity that unless it can pursue its claim the loss that falls on it will be passed on to the utility users in its rates and is an unauthorized expenditure of their money.[3]

None of the cases decided since *Haney v. City of Lexington,* limiting the impact of that decision, find fault with its legal reasoning or conclusions. We now reaffirm the legal conclusions and the rule of law set out in *Haney.* In the present case the movant's third party complaint presents a claim for relief cognizable under the rule of law thus established. The decision of the Court of Appeals is reversed, and the Order of the trial court dismissing the third party complaint is set aside with directions for further proceedings in conformity with this opinion.

The doctrine of municipal liability as established in *Haney* and reaffirmed in this case shall apply to all pending cases, including appeals in which the issue has been preserved.

AKER, GANT, LEIBSON and VANCE, JJ., concur.

WINTERSHEIMER, J., concurs by separate opinion.

STEPHENSON, J., dissents by separate opinion in which STEPHENS, C.J., joins.

WINTERSHEIMER, Justice, concurring.

I concur with the result reached by the majority opinion. However, some other valid considerations need to be expressed because more than half of the population of Kentucky has chosen to incorporate into municipalities. To expose half of the taxpayer-supported governments to potential liability while the remainder is immune seems to conflict with the general concept of equal protection of the law.

I fully agree with the philosophy that liability for negligent acts is a universal duty owed by every person or legal entity to every other person or legal entity. The duty to exercise ordinary care under all the circumstances is a standard of conduct that does not depend on the identity or status of the wrongdoer. All governmental organizations, municipal or otherwise, should be responsible and accountable for their conduct.

Any distinction between governmental and proprietary activity is artificial. The victim of the misconduct, provided that the claim is based on fault and duty, is wronged and entitled to redress for such a grievance by way of appropriate damages. There is no legitimate way to distinguish between private and public negligent acts.

The physical functions of government and all the manifestations thereof must be conducted in a safe and proper manner. The only valid exercise of government which should be exempt from tort liability is the purely administrative or legislative decision-making process. Redress from an improper or bad decision or from the exercise of poor judgment is at the ballot box. Compensation for the failure to exercise ordinary care under all the circumstances is obtained by means of damages.

3. One of the companion cases which has been heard and considered along with the present case is *Sanitation District No. 1 of Campbell and Kenton Counties, Kentucky v. City of Covington, Kentucky,* 84-SC-429-DG. In that case the movant argues with much force that it is "a sanitation district, which is both a quasi corporation and governmental entity, which was forced to misdirect its funds to cure a potentially dangerous situation created by the negligence of a municipal corporation in the construction and/or maintenance of a storm sewer...." If true, why should this government agency have its funds misdirected to cover a loss caused by the negligence of a municipal corporation?

Consequently, I do not agree with the exceptions made by the majority in regard to the use of the regulatory function as illustrated by *Grogan v. Commonwealth,* Ky., 577 S.W.2d 4 (1979), or *Commonwealth, Dept. of Banking & Securities v. Brown,* Ky., 605 S.W.2d 497 (1980). Although violations of appropriate conduct in the regulatory sector may be an extremely remote possibility for liability, the entire avenue of relief should not be foreclosed. To preserve an exception would foster a return to the case-by-case judicial erosion of the principle of accountability for wrongdoing in the same fashion that the courts have chipped away at the 21-year-old *Haney, supra,* decision. It seems to border on the inconsistent to permit lingering exceptions. Any classification should be uniform and very narrow and should be made by the legislature in a comprehensive governmental tort claims act. Any wounds should be fully cleansed.

Sovereign immunity is a judicially-created defense. Municipal immunity has been eliminated as part of that broad defense posture. Municipal immunity is closely interwoven with sovereign immunity, and to consider them separately is an exercise in inequality. The people of a community come together to create a local government. The precise form of that government is unimportant to them. The public demands the kind of government most responsive to its needs. Certainly the public does not want any undue liability resulting from selection of a form of government.

Sovereign immunity has been extended to counties and urban county government. *See, Hempel v. Lexington-Fayette Urban County Government,* Ky.App., 641 S.W.2d 51 (1982). A metropolitan sewer district has been determined to be an instrumentality of the state clothed with sovereign immunity. *Gnau v. Louisville & Jefferson County Metropolitan Sewer District,* Ky., 346 S.W.2d 754 (1961). Almost every form of physical function that a city now provides can be delegated to private enterprise except for the ultimate basic pure-governmental decision making and the exercise of judgments connected therewith.

Ultimately the decision as to whether a municipality should be responsible in tort for the failure to provide proper services or the provision of such services in a negligent fashion is best left to the Kentucky General Assembly under the provisions of Section 231 of the Kentucky Constitution and KRS 82.081. A proper resolution of the conflicting public policy choices which the problem of municipal and governmental immunity gives rise to are best left to the legislature. That group after examining the empirical data regarding the potential liability exposure and exploring the availability of methods of defense may well decide that municipal functions are either deserving of protection or may classify them in such a way as to provide appropriate redress to the aggrieved individuals.

Approximately thirty-three states have enacted tort claims acts which in some way provide for an award of damages when there is a breach of duty to exercise ordinary care under all the circumstances. Some states have restored fairly broad immunity to cities. A few states provide for a general rule of liability subject to specific exceptions. Five states have enacted legislation which imposes open-ended liability subject to a dollar limitation in the amount of damages that are recoverable against the city.

Abrogation of the doctrine of governmental immunity only removes the defense of immunity and should not create any new liability for a municipality or other government. The removal of immunity does not impose absolute or strict liability, *see Jones v. State Highway Com'n,* 557 S.W.2d 225 (Mo., 1977).

In general it must be recognized that there are certain discretionary acts related to the formulation of public activity and public policy.

A public entity is not liable for the exercise of discretion when, in the face of competing demands, it determines how or whether to utilize or apply existing resources. Nothing in such a statute should exonerate the public entity for negligence

arising out of acts or omissions of its employees in carrying out their ministerial function. *See, New Jersey Statutes, Annotated,* § 59:2–3(d). For an extensive survey of municipal liability and immunity, *see,* McQuillan on the *Law of Municipal Corporations,* Volume 18.

Approximately twenty-two states have adopted what is called a "discretionary function" approach to accountability for wrongful acts. Essentially, such discretionary acts have been defined in the statutes as those acts involved in the formulation of policy while ministerial acts have been defined as those related to the execution or implementation of policy. *See Rieser v. District of Columbia,* 563 F.2d 462 (D.C.Cir.1977).

The General Assembly might aid the people who have incorporated into municipalities by enacting a comprehensive tort claims act which could be applicable to all units of government.

STEPHENSON, Justice, dissenting.

First, I have a philosophical difference with the thrust of the majority opinion which treats municipal corporations the same as private corporations. There is a fundamental difference between the two. The taxpayer resident of a city is not in the same position as the stockholder of a private corporation. There are many differences which are too obvious to be enumerated. The two entities exist for different purposes. Thus, I am of the opinion the two are so different that there is a justification for treating the two differently as regards tort liability. It is true that the rule of immunity has a harsh result in denying damages to an injured person. However, there is a balancing act to be considered in whether the taxpayers of the city should bear the burden instead of the injured person.

Despite *Haney,* the rule of immunity has been so consistently adhered to we should consider the rule as expressing public policy and leave any change to legislative action.

Next, I find *Haney* a little opaque. It abolishes the governmental-proprietary test and adopts the theory of a Wisconsin case which ends with the remark that immunity should be the exception rather than the rule, whatever that means. Then, *Haney,* after piously rejecting the theory of municipal immunity for torts, proceeds to exempt judicial, legislative, quasi-judicial, and quasi-legislative acts from the rule.

The majority picks up on this exemption and cites *Brown* and *Grogan* as illustrative of regulatory functions which impose no liability by virtue of failure to perform. Somehow, to my amazement, these cases are wedged into a definition of quasi-judicial and quasi-legislative functions. It is obvious to me that these functions are executive in nature.

*Haney* and the majority are very critical of the exception to the immunity doctrine carved out over the years; according to *Haney,* "contrived devices," according to the majority, "pigeonholes for conclusions arrived at intuitively."

The majority, with a great deal of mumbo-jumbo, states that the governmental regulatory function is different from any performed by private persons or in private industries and would be a new kind of tort liability. This should be a surprise to all. Private industry routinely carries on inspections to conform to laws and regulations.

My prediction is that these exceptions in the majority opinion will cause the same difficulty as illustrated in post-*Haney* cases. Perhaps these cases are not models of rational thought; yet they sought to ameliorate the harshness of the rule on immunity. On the bright side, it will call for a great many more opinions from this court explaining just what is meant by the majority opinion. I look forward to this development with anticipation.

In answer to the proposition that "liability follows negligence," I have no hesitation in stating that the individuals who commit torts, even inspectors who fail to follow duties, should be liable. This should satisfy "the concept of liability for negligence expresses a universal duty owed by all to all." Let the case be tried against the individual or individuals committing the

tort. Thus, the injured party is not precluded from obtaining judgment against the guilty party. Whether the cause of action could be maintained against the city should be left as is or to the legislature.

It appears that the majority opinion stands on principle with exceptions.

The majority opinion will undoubtedly lead to bankruptcy of many municipalities, large and small. My only suggestion to city fathers is to run for the hills and seek help from the legislature.

STEPHENS, C.J., joins in this dissent.