**8**

Ellis NOBLE, Administrator of the Estate of Amel Noble, Deceased, Appellant,

v.

Steven J. SARTORI, M.D., Appellee.

No. 89–SC–471–D.

Supreme Court of Kentucky.

Sept. 27, 1990.

Rehearing Denied Dec. 27, 1990.

Escum L. Moore, Jr., Turley and Moore, Lexington, for appellant.

Joe L. Travis, Travis and Knight Law Offices, Somerset, for appellee.

J.B. JOHNSON, Jr., Special Justice.

Amel Noble and his brother James were employed in a deep mining coal operation in Knox County, Kentucky. On December 11, 1984, they were working close to each other when Amel began experiencing physical symptoms which he interpreted as "having a heart attack." The brothers immediately left the mine, proceeding to the closest hospital, Knox County General, which was some eight to ten miles from the mine site; a co-worker called Ellis Noble, another brother and appellant herein, and asked him to meet Amel and James at the emergency room of the hospital.

Upon arriving at the hospital, Amel was seated in a wheel chair in the emergency room area by his brothers, as his symptoms were increasing in severity. Ellis went to the first person he saw in the hospital who was dressed "like a doctor," i.e., in a white coat and bearing a stethoscope. The evidence in the case varies slightly at this point, but in substance indicates that Ellis asked this individual (who turned out to be appellee, Dr. Sartori, who was not on emergency room duty at the time) more than once to "help my brother, he's having a heart attack." Ellis testified that he asked or pleaded with Dr. Sartori three times, whereas Dr. Sartori admitted to two requests for assistance. His testimony is as follows:

Q384: Well, did you offer any medical assistance at all at that time?

A. I didn't know what his problem was.

Q385: Well, didn't his brother tell you he was having a heart attack?

A. Yes.

Q386: And you can't tell by just looking at someone sitting there, whether or not they are having a heart attack, can you?

A. Correct.

Q387: So then the brother could have been right, couldn't he?

A. Correct.

. . . .

Q393: And if you had made the determination that he needed assistance at that time, what would you have done?

A. Probably ask the nurse to take him to the trauma room.

On each request for help, Ellis was rebuffed, and instructed go "get in line" or "sign in." The entire transaction at Knox County General Hospital, from arrival to departure, took eight to fifteen minutes.

The brothers decided to seek other help; they went to Southeast Kentucky Baptist Hospital in Corbin, a drive of 30–35 minutes, where Amel was immediately admitted. He died the next day as a result of myocardial infarction (heart attack).

Ellis Noble, administrator of the estate of Amel Noble, initiated this action in the Knox Circuit Court, seeking to recover for Dr. Sartori's alleged negligence in failing to examine, treat and admit Amel to Knox County General Hospital. A jury trial was commenced, and at the close of appellant's proof, the court directed a verdict in favor of Dr. Sartori on the grounds that he owed no legal duty to Amel Noble. The Court of Appeals affirmed and we granted discretionary review.

The premise underlying Dr. Sartori's position that he had no duty in this case, is that a physician's duty to act with reasonable care only arises after he agrees to treat a patient, thus establishing a physician/patient relationship. While this is true as an abstract proposition, the question is whether that abstract proposition applies in the specific circumstances of this case. As Judge Wilhoit stated in his dissent in the Court of Appeals:

Here we have a physician in a hospital, obviously functioning as a physician on the staff does, who takes it upon himself on three occasions to direct the decedent's brother what to do.

In *Grayson Fraternal Order of Eagles v. Claywell*, Ky., 736 S.W.2d 328, 330 (1987), speaking to "the old English writ system, which only selectively recognized a duty and provided a remedy at the King's pleasure", we pointed out this system has been long since discarded as the basis for the tort system, replaced in the main with the negligence concept, citing *Gas Service Company, Inc. v. City of London*, Ky., 687 S.W.2d 144, 148 (1985). Paraphrasing *Tort Law in America, An Intellectual History*, by G.E. White, pp. 17–18 (1980), we stated:

The concept of liability for negligence expresses a universal duty owed by all to all. The duty to exercise ordinary care commensurate with the circumstances is a standard of conduct that does not turn on and off depending on who is negligent.

As pointed out in *Gas Service Co., Inc. v. City of London, supra*, "the abstract resolution of whether there is a duty is invariably result oriented." Therefore, the question here becomes whether the actions of the physician were negligent in the circumstances, and if so, whether the jury could infer what he did was a substantial factor contributing to Noble's death.

Ironically, the evidence shows that Dr. Sartori was the only physician available at the hospital on the morning in question who could have treated a heart attack victim. He admits that he rendered no emergency medical care to Amel Noble, even though he was available and capable of rendering potential life saving treatment.

There is a dearth of case law upon this subject. However, the Supreme Court of Oregon recognized the existence of a legal duty by a physician in an emergency situation in *Rockhill v. Pollard*, 259 Or. 54, 485 P.2d 28 (1971) wherein the Court held (at page 32):

Certainly, a physician who is consulted in an emergency has a duty to respect that interest, at least to the extent of making a good-faith attempt to provide adequate treatment or advice. We think a jury could infer from the evidence that the defendant willfully or recklessly failed to perform that duty.

Thus, although we recognize that in the usual situation a doctor is under no obligation to treat a person, we also recognize the law implies a duty wherever circumstances put parties in a relationship to each other where when one acts negligent-

ly it causes injury to the other. The situation is no different with a doctor in an emergency room in the present circumstances than with a hospital with an emergency room in *Richard v. Adair Hospital Foundation Corporation*, Ky.App., 566 S.W.2d 791 (1978). In both cases the evidence is such that a jury may infer that the defendant was negligent in the circumstances.

■ We reverse the Court of Appeals and remand this case to the Knox Circuit Court for a new trial. A jury should be instructed to determine if appellee's actions were substantial factor in causing Amel Noble's death, and if so, to assess damages.

COMBS, GANT, LEIBSON, and WINTERSHEIMER, JJ., concur.

STEPHENS, C.J., and VANCE, J., dissent.