RENDERED: FEBRUARY 4, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1073-MR

JERAMIE STANLEY, AS GUARDIAN
OF BENNIE JUNIOR STANLEY;
CRYSTAL STANLEY, AS
GUARDIAN OF BENNIE JUNIOR
STANLEY; AND JERAMIE
STANLEY, INDIVIDUALLY                                      APPELLANTS


                          APPEAL FROM FAYETTE CIRCUIT COURT
v.                        HONORABLE THOMAS L. TRAVIS, JUDGE
                          ACTION NO. 18-CI-03700


SAMEER MADHU DESAI, M.D.                                      APPELLEE


                              OPINION
                              AFFIRMING

                          ** ** ** ** **

BEFORE: ACREE, GOODWINE, AND JONES, JUDGES.

ACREE, JUDGE: Jeramie Stanley, as Bennie Junior Stanley's guardian, appeals

the Fayette Circuit Court's June 24, 2020 order granting summary judgment in

favor of Dr. Sameer Madhu Desai. Jeramie argues the circuit court's entry of

summary judgment should be reversed because it is based on the erroneous

conclusion of law that Dr. Desai did not owe a duty to Stanley. Finding no error, we affirm.

## BACKGROUND

On October 21, 2017 police responded to a 911 call regarding a suspicious vehicle idling for about 45 minutes by a vacant home. Once police arrived, they saw Bennie Stanley asleep with a handgun in his lap. The police knocked on the window causing Stanley to wake up and exit the car. When Stanley was detained, officers conducted a search of his car and found 5.4 grams of marijuana.

During this interaction, Stanley complained of an injury to his ribs from a workplace accident earlier that day. Because of that complaint, police called EMS to evaluate him. While waiting on EMS, police discovered Stanley had an emergency protective order (EPO) against him stemming from a physical altercation with his estranged wife. The EPO prevented him from possessing a firearm. After the evaluation, EMS offered to transport Stanley to the hospital, but he refused resulting in police taking him to the University of Kentucky Emergency Department (UK ED).

Health care workers at UK ED asked Stanley to sign a consent-to-treat form but he refused. Therefore, staff moved Stanley to a room where medical

personnel at the hospital could comply with EMTALA,[1] the federal law mandating

examination and treatment under such circumstances. Dr. Desai conducted this

examination, during which Stanley refused to give any health information or

otherwise cooperate. Stanley expressly told him he did not want to be treated. The

only information he provided Dr. Desai was that he suffered from injuries

sustained in an accident earlier that day which hurt his lungs and chest, and that he

did not use tobacco, alcohol, or recreational drugs. Other than that information,

Stanley did not supply his past medical, surgical, or family history. Despite the

lack of cooperation, Dr. Desai conducted a fourteen-point review of the systems

and a physical exam which assessed Stanley's neurocognitive functions, vital

signs, and detailed examinations of his chest, heart function, and lung function.

Based on that review, Dr. Desai did not notice any abnormalities other than a small

healing abrasion on Stanley's chest. Therefore, Dr. Desai concluded Stanley was

medically stable and released him into police custody.

      While in custody, Stanley suffered from a hypoxic event stemming

from a heart infection brought on by intravenous drug use. He brought a medical

negligence action against Dr. Desai, and against others who settled with Stanley.

---

[1] Emergency Medical Treatment and Labor Act. 42 United States Code Annotated (U.S.C.A.) § 1395dd(b)(1)(A)-(2). This statute requires that if "any individual (whether or not eligible for benefits under this subchapter) comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department[.]" 42 U.S.C.A. § 1395dd(a).

Dr. Desai filed a motion for summary judgment arguing his sole duty to Stanley was limited under the EMTALA and Stanley did not provide consent for treatment, thereby limiting his ability to treat him. The trial court agreed with Dr. Desai and granted summary judgment. This appeal followed.

## STANDARD OF REVIEW

"The proper standard of review on appeal when a trial judge has granted a motion for summary judgment is whether the record, when examined in its entirety, shows there is 'no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.'" *Hammons v. Hammons*, 327 S.W.3d 444, 448 (Ky. 2010) (quoting Kentucky Rules of Civil Procedure (CR) 56.03). "Because summary judgment does not require findings of fact but only an examination of the record to determine whether material issues of fact exist, we generally review the grant of summary judgment without deference to either the trial court's assessment of the record or its legal conclusions." *Id.* (citing *Malone v. Ky. Farm Bureau Mut. Ins. Co.*, 287 S.W.3d 656, 658 (Ky. 2009)).

## ANALYSIS

In accordance with EMTALA:

> If any individual (whether or not eligible for benefits under this subchapter) comes to a hospital and the hospital determines that the individual has an emergency medical condition, the hospital must provide either –

**(A)** within the staff and facilities available at the hospital, for such further medical examination and such treatment as may be required to stabilize the medical condition, or

**(B)** for transfer of the individual to another medical facility in accordance with subsection (c).

42 U.S.C.A. § 1395dd(b)(1). However, a patient can and may refuse consent for treatment. The statute provides for such circumstances. In those cases:

A hospital is deemed to meet the requirement of paragraph (1)(A) with respect to an individual if the hospital offers the individual the further medical examination and treatment described in that paragraph and informs the individual (or a person acting on the individual's behalf) of the risks and benefits to the individual of such examination and treatment, but the individual (or a person acting on the individual's behalf) refuses to consent to the examination and treatment. The hospital shall take all reasonable steps to secure the individual's (or person's) written informed consent to refuse such examination and treatment.

42 U.S.C.A. § 1395dd(2). Although EMTALA applies to the hospital's duty, the hospital acts through its medical professionals. Dr. Desai attempted to obtain Stanley's consent but was unsuccessful, thereby limiting the hospital's and his duty to comply with the federal law. Federal courts interpreting EMTALA, including the Sixth Circuit Court of Appeals, have held that the federal law, in addition to limiting the hospital's duty, does not provide a plaintiff with a private cause of action against a physician. *Moses v. Providence Hosp. & Med. Ctrs., Inc.*, 561 F.3d 573, 587 (6th Cir. 2009). Jeramie Stanley did not bring a claim under

EMTALA; instead, she brought a medical negligence action against Dr. Desai which requires evidence supporting a legal conclusion that a duty exists based on a physician/patient relationship. Such evidence is absent from this record.

To be successful in medical negligence cases, plaintiffs must prove a *prima facia* case to survive summary judgment. This requires proof that: (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached the standard by which the duty is measured; and (3) consequent injury. *Grubbs v. Barbourville Family Health Care, P.S.C.*, 120 S.W.3d 682, 693 (Ky. 2003). Duty, the first element, presents a question of law. *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 89 (Ky. 2003). If the plaintiff cannot identify a duty owed him by the defendant, there can be no breach, and therefore no actionable negligence. *Ashcraft v. Peoples Liberty Bank & Trust Co., Inc.*, 724 S.W.2d 228, 229 (Ky. App. 1986).

The circuit court granted summary judgment by finding Dr. Desai did not owe a duty to Stanley beyond complying with EMTALA. We agree.

Our Supreme Court in *Noble v. Sartori* said a physician's duty to a patient arises when, by his words or deeds, "he agrees to treat a patient, thus establishing a physician/patient relationship." 799 S.W.2d 8, 9 (Ky. 1990). In more nuanced terms, the court addressed the relationship this way:

> [A] physician's duty to act with reasonable care only arises after he agrees to treat a patient, thus establishing a physician/patient relationship. While this is true as an abstract proposition, *the question is whether that abstract*

-6-

> *proposition applies in the specific circumstances of this case.*

*Id.* (emphasis added) (quoted and examined in *Jenkins v. Best*, 250 S.W.3d 680, 691-92 (Ky. App. 2007)). The specific circumstances of this case convince this Court that the abstract proposition whether there was a physician/patient relationship between Dr. Desai and Stanley must be answered in the negative.

The relationship necessary to create a duty requires something more than the patient's refusal to be treated – *i.e.*, repudiation of the physician/patient relationship. Whether that "something more" takes the form of informed or uninformed consent, or mere physical acquiescence, or something else, we need not say because such facts are not present here. Stanley did not want to be in the emergency room, he did not consent to treatment and expressly refused it, and he manifested his refusal to form the necessary relationship by providing dishonest answers regarding his history of drug use. In sum, he refused to be a part of any physician/patient relationship.

Furthermore, the federal law that compelled Dr. Desai to "stabilize the medical condition" Stanley presented does not provide proof of an agreement to participate in a physician/patient relationship. We do not and need not hold, however, that a physician's voluntary agreement cannot coexist with his obedience to law. We hold only that there is no evidence in this record to support a factual finding that it coexists in this case.

Stanley exercised his right to refuse medical treatment. Dr. Desai did not owe a duty more than imposed upon him by federal law. The duty upon which Stanley bases his medical negligence claim does not exist because the evidence in this case fails to support a finding that a physician/patient relationship existed.

## CONCLUSION

Based on the foregoing, we affirm the Fayette Circuit Court's June 24, 2020 order granting Dr. Desai's motion for summary judgment.

GOODWINE, JUDGE, CONCURS.

JONES, JUDGE, DISSENTS AND FILES SEPARATE OPINION.

JONES, JUDGE, DISSENTING: Respectfully, I dissent. Stanley alleges that Dr. Desai's failure to advise further laboratory or imaging studies before clearing Stanley for release into police custody fell below the standard of care.[2] In affirming the circuit court, the majority holds that Dr. Desai did not owe any duty of care to Stanley because Stanley refused to sign the hospital's written consent to treat form, thereby negating the formation of a patient-physician relationship. While admittedly a close case, after having reviewed the record, I cannot agree that Stanley unequivocally refused all treatment to the extent that Dr. Desai did not owe him any duty of care, or that Dr. Desai cannot, as a matter of law, be liable under

---

[2] It appears from the record that the Fayette County Detention Center would not take custody of Stanley unless he was medically cleared by the hospital.

-8-

our common law for negligently performing an EMTALA examination. Rather, in my opinion, as more fully described below, I believe the issue of whether Dr. Desai breached the applicable standard of care should be submitted to jury. If the jury determines the standard of care was breached, I believe Stanley's evasiveness and lack of full cooperation with Dr. Desai's examination are appropriate factors for the jury to consider in relation to whether Stanley was comparatively at fault.

As a primary matter, Stanley's refusal to sign the written consent form is not dispositive. "Consent is a process, not a document. Authorization for treatment is the culmination of a discussion between a patient and a health care provider, the disclosure of risk and benefit information, the disclosure of reasonable alternative forms of care, and the posing of questions and answers by both the patient and the provider." *Kovacs v. Freeman*, 957 S.W.2d 251, 254 (Ky. 1997) (citation omitted). When the facts are viewed in a light most favorable to Stanley, which they must be at the summary judgment stage, I cannot agree with the majority that the evidence as a whole irrefutably established that Stanley refused any and all treatment by Dr. Desai. Rather, I would characterize the scope of Stanley's consent as limited.

Dr. Desai was able to conduct an examination of Stanley, including listening to his heart and lungs, palpating his abdomen and chest, and conducting a neurological exam to ascertain Stanley's mental state. While Stanley was not

totally compliant, I cannot agree that his actions amounted to a complete rejection of care. Stanley answered some questions, he removed his shirt when asked to do so by Dr. Desai, and he requested medication for his pain. To me, this suggests that Stanley consented to a limited examination by Dr. Desai and engaged with him to some degree, albeit reluctantly, as a patient. Moreover, I believe it is appropriate to consider the fact that Stanley was billed for Dr. Desai's examination and his treatment. It seems to me the bill is some evidence that a limited patient/physician relationship was formed between Stanley and Dr. Desai.

Certainly, Stanley frustrated Dr. Desai's examination. Stanley should have been more forthcoming about his medical history and past drug use. However, many patients do not fully and honestly answer all the treating physician's questions. Their failure to do so may hamper the physician's ability to render a proper diagnosis and is a factor to consider in assessing whether the physician actually breached the standard of care. However, it does not follow that their dishonesty severs the physician/patient relationship or negates any duty owed to them by the physician. Rather, the physician's conduct should be evaluated in light of the information he was provided and the cooperation afforded to him by the patient. Additionally, the patient may bear some responsibility for his injuries where he refuses to supply relevant information or gives false information. *Mackey v. Greenview Hosp., Inc.*, 587 S.W.2d 249, 255 (Ky. App. 1979) ("The

-10-

patient is contributorily negligent if a reasonably prudent person would know that the history was false and misleading.").[3]

I believe the operative question in this case is whether Dr. Desai's treatment met the standard of care given the information he received from Stanley, the initial diagnostics performed by the hospital, the results of his physical examination, and Stanley's vitals at the time of examination. Dr. Desai testified that he believed his care was appropriate given Stanley's denial of drug use and description of how he was injured earlier in the day. However, Dr. William Meggs, Stanley's expert, testified that Dr. Desai should have recommended Stanley for additional tests before clearing him for release. I believe whether Dr. Desai complied with the standard of care under these circumstances is a question for the jury.

The majority bases its conclusion that Dr. Desai did not owe a duty to Stanley on its characterization of the examination as one undertaken to comply with the hospital's duty under the EMTALA to "provide for an appropriate medical screening examination within the capability of the hospital's emergency department[.]" 42 U.S.C.A. § 1395dd(a). I am not firmly convinced that the

---

[3] *Mackey* was decided in 1979, at which time Kentucky applied a contributory negligence standard as a complete defense. However, in 1984, Kentucky adopted a comparative negligence standard. *Hilen v. Hays*, 673 S.W.2d 713 (Ky. 1984). Under *Hilen* and its progeny, a plaintiff's contributory negligence does not bar recovery but acts to reduce the total amount of award in proportion to the claimant's own negligence. *Id.*

examination Dr. Desai performed was solely an EMTALA examination. However, even assuming this was in fact the case, our Supreme Court has held that statutory EMTALA claims and common law medical negligence claims are not mutually exclusive. *Martin v. Ohio Cty. Hosp. Corp.*, 295 S.W.3d 104, 113 (Ky. 2009). Under the EMTALA, strict liability against the hospital attaches if the hospital fails to do the screening. However, if the hospital does the screening, there is no liability for a statutory violation of the EMTALA, even if the screening was performed incorrectly. *Id.* This does not mean, however, that the hospital or physician does not owe a common law duty of care that exceeds its statutory duty to perform the examination. In fact, our Supreme Court has suggested that a claim for negligence (*i.e.*, medical malpractice) can exist for failure to provide a competent EMTALA screening. *Id.* (emphasis added) ("On the other hand, if the hospital has complied with the statute's requirements, it is not material ***under the statute*** how well it did them—***that is a different cause of action, likely for negligence***."); *see also Thomas v. St. Joseph Healthcare, Inc.*, 335 S.W.3d 460, 464 (Ky. App. 2010) ("Although the Court recognized that there was a question whether the doctor and the hospital staff performed these actions within the appropriate standard of care, the Court concluded that the hospital had met its duties under EMTALA.").

-12-

In sum, while I believe Stanley's lack of cooperation is a relevant consideration for a jury, I cannot agree that Dr. Desai did not owe Stanley a duty of care in this case. I believe, irrespective of Stanley's lack of full cooperation, Dr. Desai had a duty to perform a reasonably competent screening/examination sufficient to determine whether an emergency condition existed. Dr. Desai argues that he performed a full fourteen-point screening and Stanley would not have allowed any more treatment. However, the question in this case, I believe, is whether Dr. Desai should have advised Stanley that additional treatment was necessary for him to properly assess whether an emergency situation existed. This is the gist of Dr. Meggs's expert opinion. Had Dr. Desai recommended additional testing and diagnostics after the initial examination and Stanley still refused to have them performed, he would have no claim. However, in this case, the operative question is whether Dr. Desai should have recommended additional testing in light of Stanley's vitals and complaints of chest pain and advised him of the risks associated with declining additional treatment. This did not occur. Rather, Stanley was remitted to police custody and told that:

> You have been evaluated today for any illness or injury
> that may require special attention while you are in jail. It
> appears that your condition is stable at this time. You
> have been medically cleared for jail.

I interpret Stanley's claim as being that Dr. Desai breached the standard of care by making the determination that Stanley was medically stable for

-13-

detainment by police without at least recommending Stanley have additional tests performed.  Based on the expert proof, I believe Stanley presented sufficient evidence of a disputed issue of material fact with respect to whether Dr. Desai breached the applicable standard of care.  Accordingly, I cannot agree with the majority that summary judgment was proper in this instance.  I would vacate the circuit court's summary judgment order and remand for further proceedings.


BRIEFS FOR APPELLANT:

Kevin C. Burke
Jamie K. Neal
Louisville, Kentucky

L. Dante diTrapano
Alex McLaughlin
Benjamin D. Adams
Charleston, West Virginia

David G. Bryant
Louisville, Kentucky

BRIEF FOR APPELLEE:

Edmund J. Benson
Stephen F. Soltis
William Thro
Margaret Pisacano
Lexington, Kentucky