NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0138n.06

No. 21-5581

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| LOUIS BRIGGS, | ) | |
|     Plaintiff-Appellant, | ) ) | **FILED**<br>Apr 01, 2022<br>DEBORAH S. HUNT, Clerk |
| v. | ) ) | |
| KATELYN HOGAN and RICHARD WILLIAMS, individually and in their official capacities as a Police Officers of Louisville Metro Government; LOUISVILLE-JEFFERSON COUNTY, KENTUCKY METRO GOVERNMENT, | ) ) ) ) ) ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY<br><br>OPINION |
|     Defendants-Appellants. | ) ) | |

Before: GILMAN, STRANCH, and NALBANDIAN, Circuit Judges.

**RONALD LEE GILMAN, Circuit Judge.** This case arises from an incident in which Louis Briggs's vehicle was pulled over by two Louisville-Jefferson County Metro Government (Louisville Metro) police officers for speeding and expired tags. The resulting stop culminated in Briggs assaulting one of the officers and the other officer tasering Briggs. Briggs was subsequently indicted on six criminal charges relating to the incident, but ultimately all of the charges were dropped.

Briggs later brought an action against the officers and Louisville Metro under 42 U.S.C. § 1983 for violations of his Fourth and Fourteenth Amendment rights, for malicious prosecution, and for Louisville Metro's alleged failure to properly train its officers. He also brought claims under Kentucky state law for false imprisonment, for negligent and intentional infliction of emotional distress and outrageous conduct, and for malicious prosecution.

The district court dismissed all of the claims on the defendants' motion for a judgment on the pleadings. Briggs seeks review of that ruling through the present appeal. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I.    BACKGROUND

### A.    Factual background

On June 17, 2014, Louisville Metro police officers Katelyn Hogan and Richard Williams pulled over the vehicle being driven by Briggs because they observed speeding and expired tags. According to the officers, Briggs became confrontational with them when he exited the vehicle, causing Officer Williams to tase Briggs in order to subdue him. Briggs head-butted and kicked Officer Hogan in response. After subduing Briggs, the officers searched Briggs's person and his vehicle. The officers found a baggie containing marijuana in Briggs's left front pocket, an 18-inch knife under the driver's seat of the vehicle, and multiple rounds of ammunition in the driver's side storage compartment. From the date of the arrest, Briggs alleges that he "was subjected to a $5,000.00 cash bond, incarceration, home incarceration, and then released with conditions on June 27, 2014."

In December 2014, the Jefferson County District Court found probable cause for the following six charges: expired registration plates; reckless driving; resisting arrest; possession of marijuana; carrying a concealed, deadly weapon; and third-degree assault of a police officer. The court referred those six counts to a grand jury, and the grand jury indicted Briggs on all of them. Briggs was then arraigned, where he entered a plea of not guilty to all charges.

In December 2015, the Jefferson County Circuit Court granted the Commonwealth Assistant Attorney's motion to dismiss the assault charge. The remaining five charges were

transferred to the Jefferson County District Court to be prosecuted. In November 2016, the remaining charges were dismissed.

**B.     Procedural background**

Briggs filed this lawsuit against Officer Hogan, Officer Williams, and Louisville Metro in September 2017. He brings six claims. The first three—violations of the Fourth and Fourteenth Amendments, malicious prosecution, and the failure to supervise and train police officers (the *Monell* claim), *see Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978)—he brings under 42 U.S.C. § 1983. The remaining three—false imprisonment, negligent and intentional infliction of emotional distress and outrageous conduct, and malicious prosecution—he brings under Kentucky state law.

The defendants moved for a judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. Briggs filed a response in opposition to the motion, moved for leave to file a supplemental response and to exceed the standard page limit, and moved for leave to file an amended complaint. In August 2020, the district court granted the defendants' motion for a judgment on the pleadings, dismissing all of Briggs's claims. The court also denied Briggs's motion to exceed the page limit as unnecessary and his motion for leave to amend the complaint as untimely.

## II.     ANALYSIS

**A.     Standards of review**

We apply two different standards of review in this case. First, we review a district court's decision to grant a motion for a judgment on the pleadings de novo. *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) ("We review de novo a judgment on the pleadings granted pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, using the same standard as

applies to a review of a motion to dismiss under Rule 12(b)(6).").  The complaint is viewed in the light most favorable to the plaintiff, meaning that "the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in [the plaintiff's] favor."  *Gavitt v. Born*, 835 F.3d 623, 639–40 (6th Cir. 2016) (citation omitted).  Second, we review the district court's decision to deny the motion to amend a pleading under the abuse-of-discretion standard.  *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002).

**B.      The claims and record before us**

The complaint does not clearly state whether the two officers are being sued in both their individual and official capacities for each of the claims.  When a § 1983 plaintiff fails to affirmatively plead capacity in the complaint, we then look to the course of proceedings to determine whether the pleadings "clearly notify defendants of the potential for individual liability."  *Moore v. City of Harriman*, 272 F.3d 769, 773 (6th Cir. 2001) (en banc).  The caption of the complaint and whether the plaintiff sought both compensatory and punitive damages are relevant factors in making this assessment.  *See id.*

The caption of Briggs's complaint lists both officers in their individual and official capacities, and Briggs seeks both compensatory and punitive damages.  "Taken as a whole, the complaint likely provided sufficient notice to the officers that they were being sued as individuals."  *Id.*  We therefore construe the complaint as suing both of the officers in their individual and official capacities for the claims of Fourth and Fourteenth Amendment violations, malicious prosecution, false imprisonment, and negligent and intentional infliction of emotional distress and outrageous conduct.

In his briefing, Briggs discusses material outside of the pleadings.  Rule 7(a) of the Federal Rules of Civil Procedure defines pleadings as "(1) a complaint; (2) an answer to a complaint; (3) an

answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer." Fed. R. Civ. P. 7(a). Although our decision concerning a motion for a judgment on the pleadings "rests primarily upon the allegations of the complaint, 'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint[] also may be taken into account.'" *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (quoting *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)). We can also consider exhibits appended to the motion for a judgment on the pleadings "so long as they are referred to in the Complaint and are central to the claims contained therein." *Brent v. Wayne Cnty. Dep't of Hum. Servs.*, 901 F.3d 656, 695 (6th Cir. 2018) (citation omitted).

Briggs's brief discusses body-camera footage of the incident at the center of this litigation. The brief also discusses testimony presented during the preliminary hearing. But the footage and the testimony were not submitted as a part of the pleadings or exhibits appended to Briggs's response to the motion for a judgment on the pleadings. These materials are therefore not a part of the record and will not be considered in reviewing a dismissal under Rule 12(c) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 7(a); *Barany-Snyder*, 539 F.3d at 332; *Brent*, 901 F.3d at 695.

## C.     Statute of limitations

We note at the outset that neither party raises the question of whether Briggs's claims are barred by any applicable statutes of limitations. The defendants stated in the relevant portion of their answer to the complaint only that "[t]he *Amended* Complaint may be barred, in whole or in part, by the applicable statute of limitations." (Emphasis added.) But an amended complaint was never filed. The defendants' motion for a judgment on the pleadings, moreover, makes no mention

of the statutes of limitations. We therefore consider the statute-of-limitations defense waived and do not discuss it further. *See* Fed. R. Civ. P. 8(c)(1) ("In responding to a pleading, a party must affirmatively state any . . . affirmative defense, including . . . [a] statute of limitations[.]").

**D.     The state-law claims against Louisville Metro and the officers in their official capacities are barred by state sovereign immunity**

Briggs asserts Kentucky state-law claims of false imprisonment, negligent and intentional infliction of emotional distress and outrageous conduct, and malicious prosecution. The question of whether sovereign immunity precludes a state tort action is determined by Kentucky law. *See Yanero v. Davis*, 65 S.W.3d 510, 517 (Ky. 2001). "Kentucky courts recognize that a county government is cloaked with sovereign immunity." *Lea v. Conrad*, No. 3:19-cv-00419, 2020 WL 6386396, at *2 (W.D. Ky. Oct. 30, 2020) (citation and internal quotation marks omitted). The protections afforded to a county are different from the protections afforded to a municipality. "Whereas a county enjoys sovereign immunity and cannot be held vicariously liable for the torts of its employees, a municipality is immune only for torts committed in the performance of legislative or judicial or quasi-legislative or quasi-judicial functions, and can otherwise be held vicariously liable for the torts of its employees." *Schwindel v. Meade County*, 113 S.W.3d 159, 164 (Ky. 2003) (internal citation omitted).

Louisville Metro is a consolidated local government, not a county. *Reyes v. Salsman*, No. 3:15-CV-00587, 2016 WL 247582, at *2 (W.D. Ky. Jan. 20, 2016). But "the Kentucky General Assembly has granted to consolidated local governments the same sovereign immunity granted to counties." *Lea*, 2020 WL 6386396, at *2 (citation, internal alterations, and internal quotation marks omitted). Specifically, the General Assembly granted this protection through Kentucky Revised Statutes § 67C.101(2)(e), which explicitly states that a "consolidated local government shall be accorded the same sovereign immunity granted counties, their agencies, officers, and

employees." § 67C.101(2)(e); *see also A.H. v. Louisville Metro Gov't*, 612 S.W.3d 902, 914 (Ky. 2020) (applying the sovereign-immunity protections of KRS § 67C.101(2)(e) to employees acting in their official capacities).

"The doctrine of sovereign immunity extends to tort claims." *Ransom v. Louisville-Jefferson Cnty. Metro. Gov't*, No. 3:19-cv-631, 2020 WL 5944283, at *2 (W.D. Ky. Oct. 7, 2020). We therefore agree with the district court that Briggs's state-law claims against Louisville Metro are barred by sovereign immunity. Further, because "a person sued in his or her official capacity stands in the shoes of the entity he or she represents," we agree with the district court that sovereign immunity also bars Briggs's state-law claims against the officers in their official capacities. *See Lea*, 2020 WL 6386396, at *2 (internal alterations and quotation marks omitted) (quoting *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003)); *see also Yanero*, 65 S.W.3d at 522 ("[W]hen an officer or employee of a governmental agency is sued in his/her representative capacity, the officer's . . . actions are afforded the same immunity, if any, to which the agency, itself, would be entitled.").

Briggs raises confusing and unpersuasive arguments as to why state sovereign immunity does not bar his state-law claims. He claims that a Kentucky statute called the Claims Against Local Government Act (CALGA) provides the source of the defendants' immunity to this lawsuit and then contends that his malicious-tort claim falls outside of the scope of CALGA. But CALGA is not the source of the defendants' immunity. Sovereign immunity stems from common law, not from a statute. *Yanero*, 65 S.W.3d at 517 ("[S]overeign immunity is a concept that arose from the common law of England and was embraced by our courts at an early stage in our nation's history."). This concept of sovereign immunity "precludes the maintaining of any suit against the state unless the state has given its consent or otherwise waived its immunity." *Id.* (citing

Restatement (Second) of Torts § 895B(1) (Am. L. Inst. 1979)).

CALGA was enacted soon after the Kentucky Supreme Court "reaffirmed that municipal immunity extended only to 'legislative or judicial or quasi-legislative or quasi-judicial functions.'" *Schwindel v. Meade County*, 113 S.W.3d 159, 163 (Ky. 2003) (quoting *Gas Serv. Co., Inc. v. City of London*, 687 S.W.2d 144, 149 (Ky. 1985)). That Court was also "considering whether to affirm a recent Court of Appeals' decision holding that employees of immune entities did not enjoy the same immunity as their employers." *Id.* at 164. CALGA "specif[ied] what damages could be obtained against [certain] local governments that are subject to common law judgments and what obligation a local government has to provide a defense for and pay judgments rendered against its employees for the tortious performance of their ministerial duties." *Id.* at 163. The legislature expressly disclaimed any intent "to modify the existing immune status of any local government." *Id.* (citing Ky. Rev. Stat. Ann. § 65.2001(2)). CALGA, therefore, does not alter our sovereign-immunity analysis in the instant case.

**E.      Briggs did not waive his *Monell* claim against Louisville Metro or his state-law claims for false imprisonment and intentional infliction of emotional distress brought against the officers in their individual capacities**

The district court dismissed Briggs's *Monell* claim against Louisville Metro and his false-imprisonment and intentional-infliction-of-emotional-distress claims against the officers in their individual capacities on the ground that Briggs abandoned these claims when he failed to address them in his brief opposing the defendants' motion for a judgment on the pleadings. Briggs's brief, however, directly mentions the claims that the district court ruled were abandoned. Although Briggs's brief is very disorganized and does not have any headings that specifically identify when he is attempting to support these claims, his very mention of the claims demonstrates that he has not abandoned them. We will therefore proceed to address the merits of the issues that he raises.

**F.      Briggs fails to allege sufficient facts to sustain his various claims**

A plaintiff's pleadings fail to overcome a Rule 12(c) motion "when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007) (quoting *Paskvan v. City of Cleveland Civ. Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991)). Because "the legal standards for adjudicating Rule 12(b)(6) and Rule 12(c) motions are the same," we may rely on caselaw discussing Rule 12(b)(6) motions in analyzing the defendants' Rule 12(c) motion. *See Lindsay v. Yates*, 498 F.3d 434, 437 n.5 (6th Cir. 2007).

Briggs's complaint is riddled with statements that lack any factual allegations. For instance, the complaint claims that Briggs's "traffic stop resulted from the actions of overzealous, untrained, unsupervised police officers whom then intentionally, with malice, offered false evidence in an attempt to effectively cover up their overzealous conduct and malicious acts," but the complaint does not allege facts showing that the officers' response was overzealous or demonstrated a lack of training. Although the complaint is largely composed of similar inadequate allegations, we will attempt in the subsequent analysis to identify Briggs's more specific allegations that could arguably support each of his remaining claims. We will then explain why those allegations fail to overcome the motion for a judgment on the pleadings.

*1.      Fourth and Fourteenth Amendment claims*

Briggs generally alleges that the officers "violated the civil rights of Plaintiff" by "committ[ing] the mentioned actions, doing so without proper reason or authority, without reasonable or probable cause and with deliberate indifference to the rights of Plaintiff." The complaint is unclear about the nature of the Fourth and Fourteenth Amendment claims. It broadly asserts that the defendants

9

deprived Plaintiff of his constitutional rights, privileges and immunities. Moreover, while said acts were carried out under the color of law, they had no justification in law, but instead were gratuitous, illegal, improper, and deprived Plaintiff of his rights to:

(a) freedom from illegal search and seizure of his person;
(b) freedom from illegal detention;
(c) freedom from humiliation and intimidation;
(d) the enjoyment of life, liberty and property and freedom from its deprivation without due process of law;
(e) equal protection of the law;
(f) freedom from invasion of privacy.

This list does not suffice to "give the defendant[s] fair notice of what the . . . claim is and the grounds upon which it rests." *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). For that reason, we will not independently assess the complaint as it pertains to each of these vague claims.

The complaint more specifically alleges that "[a]fter tasering and incapacitating the Plaintiff, the Defendants Williams and Hogan then performed an illegal searched [sic] of Plaintiff's person and the vehicle that the Plaintiff was driving." But the complaint fails to identify how the search was illegal with any factual specificity. This allegation thus amounts to a "[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory statements" which does "not suffice" to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### 2. *Malicious-prosecution claims*

To succeed on a malicious-prosecution claim based on either a Fourth Amendment violation or a violation of Kentucky state law, a plaintiff must prove that there was a lack of probable cause in instigating the prosecution. *Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010) (identifying the elements of a federal malicious-prosecution claim); *Phat's Bar & Grill v. Louisville Jefferson Cnty. Metro Gov't*, 918 F. Supp. 2d 654, 664 (W.D. Ky. 2013) (same) (citing

*Raine v. Drasin*, 621 S.W.2d 895, 899 (Ky. 1981), *abrogated by Martin v. O'Daniel*, 507 S.W.3d 1 (Ky. 2016)). "[P]robable cause is not a 'high bar.'" *Lester v. Roberts*, 986 F.3d 599, 608 (6th Cir. 2021) (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)). "It 'requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.'" *Id.* (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018)).

When a grand jury finds that there is probable cause to indict an individual, this court applies a presumption of probable cause in later proceedings that the individual might file under § 1983. *Id.* ("The judiciary's respect for the grand jury has led courts to hold that the grand jury's finding creates a presumption of probable cause in later proceedings under § 1983."). That individual "may overcome the presumption if the defendant fabricates evidence or knowingly or recklessly makes materially false statements outside the grand-jury context." *Id.*

Briggs's complaint fails to establish either a federal or a state malicious-prosecution claim because he does not allege facts showing a lack of probable cause. The complaint alleges that Briggs was innocent and that all of the charges were dismissed in his favor. But a grand jury indicted Briggs "and triggered the presumption of probable cause." *See id.* (internal quotation marks and alteration omitted).

Briggs's allegations do not rebut that presumption. The complaint states in a conclusory manner that the officers "were willful, wanton, malicious and oppressive, as alleged, and the resulting arrest and prosecution of Plaintiff were induced by fraud, perjury and fabricated evidence, and undertaken in bad faith, in complete disregard for the rights of Plaintiff." But these allegations are simply legal conclusions that are unsupported by any facts in the complaint. The pleadings therefore do not establish a malicious-prosecution claim under either § 1983 or Kentucky state law. *See id.* at 610–13 (discussing the presumption of probable cause and ultimately affirming

summary judgment on both § 1983 and state-law malicious prosecution claims because the record contained sufficient indicia of probable cause).

### 3. Monell *claim*

To succeed on a *Monell* claim, the plaintiff "must demonstrate that the alleged federal violation occurred because of a municipal policy or custom." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013). The plaintiff can establish an illegal policy or custom by showing one of the following: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Id.* Briggs's claims do not identify any policy of inadequate training, nor is any persistent custom of federal-rights violations identified in the complaint.

In the alternative, Briggs attempts to establish a failure-to-train *Monell* claim. A failure-to-train claim requires a plaintiff to plead "(1) a clear and persistent pattern of illegal activity, (2) which the [County] knew of or should have known about, (3) yet remained deliberately indifferent about, and (4) that the [County's] custom was the cause of the deprivation of [his] constitutional rights." *Bickerstaff v. Lucarelli*, 830 F.3d 388, 402 (6th Cir. 2016). Briggs has not met these requirements.

The complaint alleges that, "[a]s a direct result of the lack of training and supervision of Defendants Williams and Hogan and other act [sic] as described, Plaintiff was harmed in that he was innocent of the charges against him and was forced to defend against false criminal charges." Similarly, Briggs alleges that "Plaintiff is informed and therefore believes and therefore alleges that at the time of charges, arrest, and prosecution the COUNTY had failed to properly train[] Defendants Williams and Hogan on the constitutional limits of an arrest, illegal searches, and the

enjoyment of life, liberty and property and freedom from its deprivation without due process of the law." These vague and conclusory allegations concerning Louisville Metro's alleged lack of training are insufficient to state a claim because they fail to identify a pattern of illegal activity to which Louisville Metro was deliberately indifferent.

### 4. *Briggs's remaining claims*

Briggs's remaining claims of false imprisonment and negligent and intentional infliction of emotional distress and outrageous conduct are state-law claims that he seeks to maintain under the federal court's supplemental jurisdiction. But "a federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims." *Rouster v. County of Saginaw*, 749 F.3d 437, 454 (6th Cir. 2014) (internal quotation marks omitted) (quoting *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006)). Because that is the case here, the district court did not err in declining to reach those claims.

### E. The district court did not abuse its discretion in denying Briggs's motion to amend the complaint

Briggs's final argument is that he should have been permitted leave to file an amended complaint because "the District Court permitted Defendants' dispositive motion to be filed outside of the time permitted in the court's scheduling order without a showing of good cause," and "what is good for the goose is good for the gander." The defendants note, however, that they filed their motion only five days after the scheduling order's deadline, whereas Briggs requested leave to file an amended complaint almost a year later. Briggs concedes that his request was untimely and that he did not make a claim that he had good cause for the delay.

"Once the scheduling order's deadline passes, a plaintiff first must show good cause under Rule 16(b) for failure earlier to seek leave to amend before a court will consider whether amendment is proper under Rule 15(a)." *Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003).

13

The district court did not abuse its discretion in denying Briggs's motion to amend the complaint because the court found that Briggs had failed to demonstrate good cause when he offered no explanation for his extremely late motion.

## VI.    CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.